**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Edward L. SPRINGS, Elisha S.**
**Bledsoe, Jason W. Joyner,**
**Defendants–Appellants.**

Nos. 03–6473, 02–6474, 02–6475.

United States Court of Appeals,
Sixth Circuit.

Aug. 4, 2004.

812

Before SILER, MOORE and SUTTON, Circuit Judges.

SUTTON, Circuit Judge.

Edward Springs, Jason Joyner and Elisha Bledsoe participated in a marijuana-distribution conspiracy along with 11 other co-defendants. After police uncovered the operation, Springs and Joyner pleaded guilty to conspiring to distribute drugs in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B) and 846, and Springs, Joyner and Bledsoe pleaded guilty to conspiring to launder money in violation of 18 U.S.C. § 1956(h). On appeal, all three defendants challenge their sentences on a variety of grounds. We affirm.

I.

In the mid–1990s, a group of individuals belonging to Los Angeles's Crip gang relocated to Chattanooga, Tennessee to establish a drug-distribution scheme. They obtained the drugs from California, distributed them locally, then sent the proceeds to their Los Angeles sources by Western Union wire transfers. Over the course of the conspiracy, more than 1,000 pounds of marijuana were sent to Chattanooga from Los Angeles, and more than $500,000 in cash was wired back to Los Angeles. Springs, Joyner and Bledsoe were all involved in the Chattanooga distribution network, and they each acknowledged their involvement in the scheme through their respective plea agreements.

Springs admitted to operating a marijuana-distribution business in Chattanooga and utilizing others to help him receive, store and distribute the marijuana. He also stipulated to (1) conspiring to distribute at least 100 kilograms of marijuana, (2) personally wiring the drug proceeds to Bryan Miller of Los Angeles and (3) recruiting others to wire money to California on several occasions. At sentencing, Springs challenged the amount of drugs attributed to him, the amount of laundered money for which he was held responsible and the recommended enhancement for his role in the offense, all of which the district court denied. The district court imposed a 160–month sentence followed by eight years of supervised release.

In connection with the plea agreement, Joyner admitted that he (1) accepted packages containing marijuana, (2) repackaged the marijuana for sale and (3) collected money for the marijuana and wired the proceeds to California. Like Springs, he stipulated to conspiring to distribute at least 100 kilograms of marijuana and recruiting others to help him with various tasks, including wiring money to Califor-

nia. Joyner also acknowledged that he used false names in connection with several wire transfers and drug shipments to conceal their true purposes. At sentencing, Joyner raised objections to the amount of drugs and wire transfers attributed to him, both of which the district court denied. The district court imposed a 72–month sentence followed by four years of supervised release.

Bledsoe acknowledged that she (1) was married to Los Angeles drug source Bryan Miller and (2) helped arrange, send and receive cash through Western Union to facilitate sales of the marijuana. At sentencing, Bledsoe objected to her presentence report and sought a downward departure under U.S.S.G. § 5K2.0 on the ground that her criminal activity fell outside the heartland of relevant cases. The district court denied her request for a downward departure and imposed a 51–month sentence followed by two years of supervised release.

## II.

This appeal presents three challenges to the defendants' sentences: (1) Springs and Joyner claim that the district court erred in determining the amount of drugs attributable to them; (2) Springs claims that the district court erred in determining the value of laundered funds attributable to him and his role in the criminal activity; and (3) Bledsoe contends that the district court should have given her a downward departure under U.S.S.G. § 5K2.0. In assessing a district court's application of the Sentencing Guidelines, we

> accept the findings of fact of the district court unless they are clearly erroneous and ... give due deference to the district court's application of the guidelines to the facts." 18 U.S.C. § 3742(e). In light of *Buford v. United States*, 532 U.S. 59, 63—66, 121 S.Ct. 1276, 149 L.Ed.2d 197 (2001)[ ], this court has held that our standard

of review of a district court's application of provisions of the Sentencing Guidelines to the facts should be treated deferentially and should not be disturbed unless clearly erroneous. *United States v. Webb*, 335 F.3d 534, 536—37 (6th Cir.2003).

### A.

With respect to the first dispute—the amount of drugs attributable to Springs and Joyner—the Sentencing Guidelines offer two pieces of pertinent guidance. "Where there is no drug seizure or the amount seized does not reflect the scale of the offense, the court shall approximate the quantity of the controlled substance." U.S.S.G. § 2D1.1, cmt. n. 12. In making this estimate, a district court may convert the amount of funds received into drugs distributed by the defendant when substantial evidence links the drug payments to the drug sales. *See United States v. Layne*, 192 F.3d 556, 578 (6th Cir.1999).

And in cases involving jointly undertaken criminal activity, the Guidelines say that a defendant's base offense level should be determined on the basis of

> all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity, that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense.

U.S.S.G. § 1B1.3(a)(1)(B). Under this provision, we have held, district courts must make two findings to hold the defendant responsible for the acts of others—namely, that the acts were within the scope of the conspiracy and that they were foreseeable to the defendant. *United States v. Campbell*, 279 F.3d 392, 399—400 (6th Cir.2002).

Both defendants pleaded guilty to distributing in excess of 100 kilograms of marijuana as part of the conspiracy. Consistent with their respective presentence reports, the district court found Springs responsible for 441.07 kilograms of marijuana and Joyner responsible for 393.47 kilograms of marijuana. While each defendant was entitled to put on his own evidence at sentencing, only IRS Agent Lynn Barker testified, and he testified in support of the calculations in the presentence report. At the close of the sentencing hearing, the district court found that the presentence reports on this issue were supported by the evidence:

> This morning the Court has heard evidence. The only evidence presented was the testimony of Special Agent Lynn Barker of the Internal Revenue Service. Based upon the contents of the factual basis and the testimony of Agent Barker, the Court makes a finding that the presentence reports are accurate with respect to the quantities of drugs and money you should be attributed to ... as defined by the United States Sentencing Guidelines. That means that the Court has made a finding that the presentence reports with respect to you two are correct and that your sentencing guidelines have also been calculated correctly.

JA at 180—81.

▪ The district court did not err in "finding that the presentence reports with respect to" Springs and Joyner were supported by the evidence. Both defendants admitted that they had distributed at least 100 kilograms of marijuana. And in finding Springs responsible for an additional 341 kilograms and Joyner responsible for an additional 293 kilograms of marijuana, the district court had ample evidence upon which to rely. During the hearing, it heard unrebutted evidence concerning the scope of the conspiracy and the foresee-

ability to each defendant of these amounts of marijuana being distributed through the conspiracy. Among other evidence, Agent Barker testified: (1) that Springs and Joyner were actively involved in the conspiracy; (2) that Springs and Joyner were aware of the activities of other co-conspirators in the scheme and recruited many of them personally; (3) that Springs and Joyner had prominent roles in the conspiracy; (4) that the conspiracy had an open nature to it in that "[i]t was no secret regarding the members of the conspiracy ... involved in getting the packages there;" and (5) that the acts of their co-defendants were reasonably foreseeable to Springs and Joyner. In view of this evidence and in view of the failure of Springs or Joyner to contest this evidence, the district court had ample reasons to adhere to the drug quantities recommended in the presentence report and supported by Agent Barker's testimony.

▪ The more difficult issue is whether the district court ran afoul of *Campbell* by failing to make specific factual findings about the scope of the conspiracy and the foreseeability of the actions of Springs' and Joyner's co-defendants. While the district court specifically found that the drug amounts calculated in the presentence report were supported by the evidence and while Agent Barker provided ample support for that conclusion as well as the answers to the two *Campbell* inquiries, the district court did not completely close this loop. At the same time, however, neither Springs nor Joyner offered evidence of their own to rebut the testimony of Agent Barker, prompting the question whether such findings are necessary in this setting and whether the absence of such findings may be deemed harmless error.

As a general rule, courts at sentencing "must—for any disputed portion of the

presentence report or other controverted matter—rule on the dispute or determine that a ruling is unnecessary." Fed. R.Crim.P. 32(i)(3)(B). Rule 32, we have explained, "prohibits a court faced with a dispute over sentencing factors from adopting the factual findings of the presentence report without making factual determinations of its own." *United States v. Lang,* 333 F.3d 678, 681 (6th Cir.2003). We recently have held, however, that a

> defendant cannot show that a [presentence report] is inaccurate by simply denying [its] truth. Instead, beyond such a bare denial, he must produce some evidence that calls the reliability or correctness of the alleged facts into question. If a defendant meets this burden of production, the government must then convince the court that the [presentence report's] facts are actually true. But the defendant gets no free ride: he must produce more than a bare denial, or the judge may rely entirely on the [presentence report].

*Id.* (quoting *United States v. Mustread,* 42 F.3d 1097, 1102 (7th Cir.1994)).

As in *Lang,* where the defendant contested a material fact in her presentence report without producing any evidence in support, 333 F.3d at 682, so it would seem here: While Springs and Joyner objected to certain aspects of their presentence reports, neither one produced any evidence in support of these claims and neither one in the end did anything more than make a "bare denial" to the presentence report. *Id.* at 681. Whether *Lang* or *Campbell* controls in this setting, however, makes no difference to the outcome of this case because even if an error occurred it was assuredly harmless.

Courts of appeals, it is clear, may deem harmless district-court errors in applying the Federal Rules of Criminal Procedure or in applying the Sentencing Guidelines. Under Rule 52(a) of the Federal Rules of Criminal Procedure, "[a]ny error, defect, irregularity, or variance that does not affect substantial rights must be disregarded." *See United States v. Carter,* 374 F.3d 399, 407 (6th Cir.2004) (holding that district court committed "a clear violation" of Fed.R.Crim.P. 32(i)(3)(B) but that its error was harmless); *United States v. Parrott,* 148 F.3d 629, 633—34 (6th Cir.1998) (holding that while the trial court "did not fully comply with Rule 32(c)(1) when it simply adopted the [presentence] report," any "error in this regard was harmless"). Under 18 U.S.C. § 3742(f)(1), while "[a] misapplication of the Guidelines by a district court warrants a remand 'for further sentencing proceedings with such instructions as the court considers appropriate,'" *United States v. Gray,* 16 F.3d 681, 683 (6th Cir.1994) (quoting 18 U.S.C. § 3742(f)(1)), not all misapplications of the Guidelines require a remand. In *Williams v. United States,* 503 U.S. 193, 112 S.Ct. 1112, 117 L.Ed.2d 341 (1992), the Court made clear that a remand is not required under § 3742(f)(1) if "the reviewing court concludes, on the record as a whole, that the error was harmless, *i.e.,* that the error did not affect the district court's selection of the sentence imposed." *Id.* at 203, 112 S.Ct. 1112.

In the present case, the alleged *Campbell* "error did not affect the district court's selection of the sentence imposed." *Williams,* 503 U.S. at 203, 112 S.Ct. 1112. At the sentencing hearing, as the Government observes, "[d]efendants offered nothing to contest the evidence [the Government] presented [ ] that the wire transfers were reasonably foreseeable and were within the scope of the conspiratorial agreement as to each defendant." Gov't Br. at 19—20. And, after the sentencing hearing, the district court credited the unchallenged testimony of Government Agent Barker who testified that the wire transfers were reasonably foreseeable and

within the scope of the conspiracy as to each of the two defendants. Under these circumstances, a remand would not, and could not, alter the outcome of this case. *See Carter*, 374 F.3d 399, 407 (holding that remand where Rule 32(i)(3)(B) violation was harmless "would only be a waste of judicial resources").

To say that the district court did not commit reversible error in this instance is not to say that it followed the preferred practice. At least two commendable suggestions come to mind: make the specific Rule 32 findings in every case (no matter what the defendant does) and at a minimum ask defendants and their counsel at the end of every sentencing determination whether they wish the court to make any other findings or any more-particularized findings regarding the factual predicates for their sentence. The former suggestion adheres to the literal requirements of Rule 32. The latter suggestion offers a belt-and-suspenders solution to this problem by also putting the issue in the hands of defendants and their counsel, which may be exactly where it belongs. *See Carter*, 374 F.3d 399, 407 ("Our conclusion, however, should in no way be seen as undermining the requirements of Rule 32. District courts are warned that they must continue to comply literally with Rule 32. We stress that, given the specific circumstances in this case, the error was harmless because Carter's arguments cannot possibly afford him relief.").

■ One other point deserves mention with respect to Joyner's argument on this score. Even if we concluded that the district court erred in determining the drug amount for which Joyner was held accountable, that error is harmless because the adjusted offense level for Joyner's money laundering offense exceeds the offense level of his drug offense. Were the district court to reduce the amount of drugs attributable to Joyner on remand, in other words, his ultimate sentence would still be governed by the unchallenged higher offense level for the money laundering count. *See* U.S.S.G. §§ 3D1.2(b), 3D1.3(a).

## B.

### 1.

■ Springs separately argues that the district court erred in determining the amount of laundered funds for which he was found responsible. We disagree.

At the time of sentencing, the applicable version of Section 2S1.1(b) of the Guidelines provided that the district court shall increase a defendant's offense level by three levels when he is found responsible for more than $350,000 in laundered funds. U.S.S.G. § 2S1.1(b)(2)(D)(2000). This amount is "determined on the basis of ... all acts and omissions ... that were part of the same course of conduct or common scheme or plan as the offense of conviction." U.S.S.G. § 1B1.3; *see United States v. Crouch*, 288 F.3d 907, 909 (6th Cir.2002) (noting that under § 2S1.1, the district court properly determined the value of laundered funds by considering funds involved in substantive money laundering offense and the value of aggregated transactions for the entire enterprise).

The district court did not err in making this finding. Agent Barker testified that Springs engaged in all aspects of the conspiracy, including (1) traveling to California to obtain the marijuana, (2) receiving packages in Chattanooga, (3) distributing the drugs to others, (4) recruiting others to distribute and wire money back to California and (5) determining who was responsible for lost shipments. The undisputed evidence also shows that Springs wired funds and knew that other coconspirators had engaged in similar activities and that the conspiracy operated in an open manner such that its members gener-

ally knew about the illegal activities and roles played by other members.

Springs argues that when applying the Guidelines to particular defendants who have been convicted for their role in a conspiracy, a district court must differentiate between the co-conspirators and make individualized findings of fact for each defendant. *See United States v. Orlando,* 281 F.3d 586, 600—02 (6th Cir.2002) (remanding case for resentencing because district court failed to make specific findings to justify holding defendant accountable for entire amount of money allegedly laundered during his involvement in conspiracy). As noted above, however, the district court heard testimony from Agent Barker that supported "a finding that the pre-sentence report [was] accurate with respect to the quantities of drugs and money." JA at 181. Having failed to challenge the testimony of Agent Barker, who provided evidence supporting the pre-sentence report on this very point, Springs is in no position to challenge the district court's resolution of this issue.

Nor, at any rate, would a different calculation of laundered funds attributable to Springs make a difference to his sentence. Under U.S.S.G. §§ 3D1.2(b) and 3D1.3(a), Springs' sentence still would be governed by the larger drug conviction offense level, which we have affirmed.

### 2.

■ Springs lastly argues that the district court erred in determining his role in the criminal activity. Section 3B1.1 of the Guidelines says that a defendant's base offense level should be increased (1) four levels if he was an "organizer or leader" of criminal activity involving five or more participants or that was otherwise extensive, (2) three levels if he was a "manager or supervisor" of criminal activity involving five or more participants or that was otherwise extensive or (3) two levels if he was an "organizer, leader, manager or supervisor" of any criminal activity not described by (1) or (2). U.S.S.G. § 3B1.1.

In making this assessment, district courts consider the following relevant factors:

> the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others.

U.S.S.G. § 3B1.1, cmt. n. 4; *see United States v. Davis,* 306 F.3d 398, 423 (6th Cir.2002).

The record supports the district court's finding that Springs warranted a four-level enhancement as an organizer and leader of the conspiracy. Agent Barker testified that Springs (1) helped obtain the source marijuana from California, (2) helped recruit individuals to sell the marijuana and send the proceeds to California and (3) was one of the largest purchasing customers of the marijuana from California.

Attempting to rebut this conclusion, Springs notes that he did not participate in the operation to the same extent as Brian Miller or Gerald Frost, two of the organizers of the entire operation, and that he should have received at most a three-level enhancement as a manager or supervisor as a result. But the Guidelines do not impose a limit on the number of leaders or organizers of a conspiracy, as Springs himself recognizes by claiming that Miller *and* Frost met this requirement. "There can, of course, be more than one person who qualifies as a leader or organizer of a criminal association or conspiracy." U.S.S.G. § 3B1.1, cmt. n. 4; *see Davis,* 306 F.3d at 423. As the record supports the

district court's finding that Springs was an organizer and leader of the conspiracy, that finding must be respected on appeal, even if (as Springs argues) other participants in the conspiracy met the requirement as well and even if those other participants were particularly deserving of the enhancement. Because this challenge to his sentence is mistaken and because Springs raises no other challenges to this calculation, we conclude that the district court properly assessed Springs' role in the criminal activity under the Guidelines.

### C.

■ Bledsoe contends that the district court should have granted her a downward departure under U.S.S.G. § 5K2.0 given the unique circumstances of her participation in the conspiracy. *See Koon v. United States*, 518 U.S. 81, 92—93, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996). We disagree.

When a district court recognizes that it has discretion to depart from the applicable Guidelines range and opts not to invoke that discretion, the refusal to depart may not be reviewed on appeal. *See United States v. Prince*, 214 F.3d 740, 766 (6th Cir.2000); *see also* 18 U.S.C. § 3742(a). In this instance, the record shows that the district court (1) fully considered Bledsoe's argument for a downward departure from the guideline range, (2) concluded her case did not fall outside the heartland of cases, (3) denied her motion and (4) imposed the lowest sentence available under the Guidelines' range. Under our case law, that determination is neither appealable nor otherwise subject to review by this Court.

Nor does the passage of the Prosecutorial Remedies and Other Tools to End the Exploitation of Children Today Act of 2003 ("PROTECT Act"), Pub.L. No. 108–21, 117 Stat. 650, 670 (2003), alter that conclusion. Under § 401(d)(2) of the PROTECT Act, it is true, Congress has directed appeals courts to give de novo review to downward departures and upward departures from the Guidelines. But the Act does not alter the standard for reviewing—or indeed permitting appeals from—sentences in which the district court recognized that it had discretion to depart from the Guidelines-recommended range but chose not to exercise that discretion.

### III.

For the foregoing reasons, we affirm the district court's judgment as to each defendant.

KAREN NELSON MOORE, Circuit Judge, dissenting in part.

MOORE, Circuit Judge.

Because I believe the district court failed to make particularized findings on the drug-quantity determination and the aggravated-role enhancement for Springs, I dissent, as these issues should be remanded to the district court for the purpose of making the findings required under our Circuit precedent.

### A. Determination of Drug Quantities Attributable to Springs [1]

In determining the drug quantities attributable to Springs, the probation officer obtained wire records from Western Union, the service used by him and his co-

---

**1.** Although I believe the district court erred in its method of attributing the drug quantity to Joyner as well, the majority correctly points out that because Joyner's sentence was ultimately determined using the higher adjusted offense level for his money-laundering of-fense, a result of offense-grouping, any error would be harmless, as it would not change the outcome for sentencing purposes. Accordingly, I do not dissent with respect to Joyner.

conspirators to wire drug proceeds back to California. Using the individual wire transfer of each transaction, the probation officer calculated the amount of marijuana that the wire amount represented, using $500 as the going rate per pound of marijuana. The presentence report ("PSR") arrived at a total drug amount of approximately 449 kilograms of marijuana, of which Springs was ultimately held responsible for 441.07 kilograms of marijuana. The district court accepted these findings and used them in sentencing Springs, concluding that "the presentence reports [were] accurate with respect to the quantities of drugs" to be attributed to the defendant, and that therefore the sentencing guidelines were correctly calculated. Joint Appendix ("J.A.") at 181.

"With respect to offenses involving contraband (including controlled substances), the defendant is accountable for all quantities of contraband with which he was directly involved and, in the case of a jointly undertaken criminal activity, all reasonably foreseeable quantities of contraband that were within the scope of the criminal activity that he jointly undertook." U.S.S.G. § 1B1.3, Application Note 2; *see also United States v. Owusu,* 199 F.3d 329, 344 (6th Cir.2000). "In short, under the Sentencing Guidelines, a defendant is accountable for the conduct of other conspirators only if that conduct was (1) reasonably foreseeable to him and (2) in furtherance of the jointly undertaken criminal activity." *United States v. Swiney,* 203 F.3d 397, 402 (6th Cir.2000).

We explained and applied § 1B1.3 in *United States v. Campbell,* 279 F.3d 392 (6th Cir.2002). There, we determined that it was clear error to hold the defendant responsible for the total amount of drugs distributed in the conspiracy, pursuant to U.S.S.G. § 1B1.3, without making two particularized findings. Specifically, we held

that U.S.S.G. § 1B1.3(a)(1)(B) "requires that the district court make *particularized* findings with respect to both the scope of the defendant's agreement *and* the foreseeability of his co-conspirators' conduct before holding the defendant accountable for the scope of the entire conspiracy." *Id.* at 400. We explained that to hold otherwise would "expose defendants to being sentenced on conspiracies whose activities they did not agree to jointly undertake or could not foresee." *Id.* We indicated that the first (scope of defendant's agreement) prong calls for the district court to "differentiate between co-conspirators' varying degrees of culpability." *Id.* Additionally, we cautioned that "[t]he mere fact that [the defendant] [is] aware of the scope of the overall operation is not enough to hold him accountable for the activities of the whole operation." *Id.* at 401.

Although Lynn Barker, a special agent with the Internal Revenue Service, criminal investigation division, and the IRS and DEA case agent in the investigation leading up to the arrests and convictions of the three defendants, testified vaguely regarding Springs's involvement in the conspiracy, the district court failed to make *particularized* findings as to the scope of his agreement and to "differentiate between co-conspirators' varying degrees of culpability," as is required by *Campbell.* The court simply stated: "the Court makes a finding that the presentence reports are accurate with respect to the quantities of drugs and money you should be attributed to." J.A. at 181. Furthermore, Agent Barker's testimony does not provide an adequate basis to support the district court's conclusory remarks. Because the court's conclusory statement fails to meet the *Campbell* requirement of particularized findings, I believe that the issue of the amount of drugs to be attributed to Springs should be remanded to the district court.

It is absolute overreaching to rely, as the majority does, on *United States v. Lang*, 333 F.3d 678 (6th Cir.2003), a case decided subsequent to *Campbell*, for the proposition that a district court need not make particularized findings with regard to Springs's involvement in the conspiracy. The majority asserts that pursuant to *Lang*, the district court may simply embrace the findings of the PSR where the defendant fails to produce evidence in support of his or her assertion that the facts found in the PSR are inaccurate or false. Although this is what *Lang* states, it is not applicable to the instant case, because *Lang* does not involve U.S.S.G. § 1B1.3. *Lang* involved a defendant who committed mail fraud. A PSR was drawn up, which recommended a two-level increase in the base offense level pursuant to U.S.S.G. § 3B1.3, because the PSR concluded that the defendant had "abused [ ] a position of trust or use[d][ ] a special skill." *Lang*, 333 F.3d at 680. The defendant's attorney objected to this recommendation, submitting to the probation officer who prepared the PSR a letter objecting to the enhancement on the ground that Lang's position was not a position of trust. However, the district court, relying on the facts as set forth in the PSR, overruled Lang's objection and enhanced her offense level accordingly. On appeal, she argued that "the district court committed reversible error by relying on factual findings contained in the PSR rather than making its own determination of the facts." *Lang*, 333 F.3d at 681. We disagreed, specifically approving a Seventh Circuit decision, which held that:

A defendant cannot show that a PSR is inaccurate by simply denying the PSR's truth. Instead, beyond such a bare denial, he must produce some evidence that calls the reliability or correctness of the alleged facts into question. If a defendant meets this burden of production, the government must then convince the court that the PSR's facts are actually true. But the defendant gets no free ride: he must produce more than a bare denial, or the judge may rely entirely on the PSR.

*Id.* (citing *United States v. Mustread*, 42 F.3d 1097, 1102 (7th Cir.1994)) (citations and internal quotation marks omitted). Ultimately, we concluded that because the defendant provided no evidence demonstrating that she had not abused a position of trust, the district court was not obligated to "take additional evidence, and could properly rely on the facts found in the revised PSR to evaluate the propriety of the enhancement." *Id.* at 682.

The majority errs by construing *Lang'*s holding as applying to every particular sentencing provision, for that is incorrect in light of *Campbell*, which has specifically held previously that with regard to U.S.S.G. § 1B1.3(a)(1)(B), the district court must make particularized findings with respect to (1) the scope of the defendant's agreement *and* (2) the foreseeability of his co-conspirators' conduct, before holding the defendant accountable for the scope of the entire conspiracy. *Campbell*, 279 F.3d at 400.

Furthermore, a panel lacks the authority to overrule a prior decision of another panel. *United States v. Orlando*, 281 F.3d 586, 598 (6th Cir.2002). Yet it appears that this is what the majority suggests we do, for by citing *Lang* in the way the majority does, the majority completely contradicts the mandate of *Campbell*, which is binding law governing the specific issue in this case. The majority position is made even more difficult to understand, for *Campbell* has subsequently been cited for the very proposition the majority seeks to contradict. *See United States v. Tocco*, 306 F.3d 279, 289 (6th Cir.2002) (iterating that district court must make the two particularized findings as set forth in *Camp-*

*bell* before holding a defendant accountable for the acts of others under U.S.S.G. § 1B1.3); *United States v. Orlando,* 281 F.3d 586, 600–01 (citing *United States v. Swiney,* 203 F.3d 397, 402 (6th Cir.2000), sentencing issue remanded to district court because district court failed to make particularized findings required); *see also United States v. Lewis,* 88 Fed.Appx. 898, 900 (6th Cir.2004) (remanding to the district court when it held defendant accountable for scope of entire conspiracy, but failed first to make particularized findings as to scope of defendant's agreement and foreseeability of his co-conspirators' conduct, as is required by *Campbell* ). Consequently, I believe that the case should be remanded so that the district court can make the particularized findings required by *Campbell* regarding the amount of drugs that should be attributed to Springs.

My position is not swayed by the majority's assertion that under either *Campbell* or *Lang,* the error committed by the district court was harmless, and therefore, reversal and remand is unnecessary pursuant to Fed.R.Crim.P. 52(a),ᵜ which states that "[a]ny error, defect, irregularity, or variance that does not affect substantial rights must be disregarded." The majority relies on *United States v. Parrott,* 148 F.3d 629 (6th Cir.1998), for illustration of that concept. The majority also relies on *Williams v. United States,* 503 U.S. 193, 112 S.Ct. 1112, 117 L.Ed.2d 341 (1992), for the idea that remand is unnecessary where a district court misapplies a sentencing guideline, but "the reviewing court concludes, on the record as a whole, that the error was harmless, *i.e.,* that the error did not affect the district court's selection of the sentence imposed." *Id.* at 203, 112 S.Ct. 1112. However, the majority mischaracterizes what the district court did,

for it did not misapply a sentencing guideline in this case. Rather, the district court was required, under *Campbell,* to make particularized findings of fact, under U.S.S.G. § 1B1.3, to determine the scope of Springs's involvement in the conspiracy, a prerequisite step to determining which base offense level to assign him under U.S.S.G. § 2D1.1. This is because under U.S.S.G. § 2D1.1, a Drug Quantity Table establishes the appropriate base offense level.

In any event, failure to make the particularized findings affected Springs's substantial rights because this error *did* affect the district court's selection of the sentence imposed. How the majority can conclude this error was harmless is difficult to understand, when it goes to the very determination of the sentence to be imposed on Springs. The particularized findings would have played a huge role in the drug-quantity determination, for without them, Springs was simply held accountable for what the PSR recommended. Accordingly, the failure of the district court to make these findings cannot be deemed harmless error.[2]

Furthermore, *United States v. Parrott,* 148 F.3d 629, illustrates this point. There, we concluded that the district court's adoption of the PSR findings and failure to make its own findings regarding the sentencing enhancement at issue was harmless error that did not call for remand. *Id.* at 634. However, that result was justified because the defendant admitted at the plea hearing to having fraudulently stolen money from people, and this was the sole disputed fact in the PSR. *Id.* Accordingly, it was harmless error, because the defendant admitted that he "committed theft of property under [state] law." *Id.* In the present case, the same cannot be said,

---

2. For these reasons, the majority's citations to *United States v. Carter,* 374 F.3d 399 (6th Cir.2004), are inapposite.

however, for Springs did not confess, nor do we know what the district court would have found regarding the scope of his involvement in the conspiracy, and hence the drug quantity which should be attributed to him for sentencing purposes.

Accordingly, I respectfully dissent from the majority's opinion and determination regarding Springs's drug quantity and from the majority's conclusion that "a remand would not, and could not, alter the outcome of this case." Maj. Op. at 816–17.

B. Springs's Four-level Increase for Aggravating Role Pursuant to U.S.S.G. § 3B1.1

With regard to the majority's determination that the district court did not err when it enhanced Springs's base offense level by four levels for his role in the offense as an "organizer or leader" pursuant to U.S.S.G. § 3B1.1, it is first important to note that the majority cites *United States v. Webb*, 335 F.3d 534, 536–37 (6th Cir.2003), for the view that "[i]n light of *Buford v. United States*, 532 U.S. 59, 63–66, 121 S.Ct. 1276, 149 L.Ed.2d 197 (2001) ... our standard of review of a district court's application of provisions of the Sentencing Guidelines to the facts should be treated deferentially and should not be disturbed unless clearly erroneous." *Id.* However, this general statement of a standard of review is not applicable where we have particularized holdings regarding specific sentencing guideline provisions. *See United States v. Henley*, 360 F.3d 509, 516 (6th Cir.2004); *United States v. Solorio*, 337 F.3d 580, 600 (6th Cir.2003). In *Buford*, the Supreme Court called for greater deference when reviewing a district court's application of a sentencing guideline where the legal decision was "fact-bound [in] nature." *Buford*, 532 U.S. at 66, 121 S.Ct. 1276. Thus, for each sentencing guideline provision, we must determine whether the application is "fact-bound." *Solorio*, 337 F.3d at 600; *see also*

*United States v. Taylor*, 248 F.3d 506, 515 (6th Cir.), *cert. denied*, 534 U.S. 981, 122 S.Ct. 414, 151 L.Ed.2d 315 (2001). In *United States v. Henley*, we specifically reserved judgment regarding the standard of review for a district court's application of U.S.S.G. § 3B1.1 to the facts of a case. *Henley*, 360 F.3d at 516. *See also United States v. Solorio*, 337 F.3d at 600. It appears that the same approach may be used here, for the way in which the issue is presented in this case renders determination of the proper standard of review unnecessary, because the district court failed to make findings of fact in its application of U.S.S.G. § 3B1.1, rendering a remand for proper findings of fact necessary under any standard.

The enhancement provision U.S.S.G. § 3B1.1, titled "Aggravating Role," states in subsection (a) that "[i]f the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive," the base offense level should be increased by four levels. Alternatively, U.S.S.G. § 3B1.1(b) calls for a three-level increase "[i]f the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive." Application Note 4 provides some guidance in determining when a defendant has acted as an "organizer or leader" as opposed to a "manager or supervisor":

In distinguishing a leadership and organizational role from one of mere management or supervision, titles such as "kingpin" or "boss" are not controlling. Factors the court should consider include the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity,

and the degree of control and authority exercised over others. There can, of course, be more than one person who qualifies as a leader or organizer of a criminal association or conspiracy. This adjustment does not apply to a defendant who merely suggests committing the offense.

U.S.S.G. § 3B1.1, Application Note 4.

The probation officer assessed Springs the four-level enhancement for both Counts One and Two, after making the following findings:

The defendant was a principal distributor of marijuana in the Chattanooga, Tennessee, area. He recruited others to wire money to California for payment of marijuana. He was present when an individual was assaulted and threatened in an attempt to obtain information regarding a stolen marijuana shipment, and participated in threatening said individual. Terrance Etchison acted as a lookout and provided muscle for Edward Springs and Yasmin Springs in their drug trafficking activity. As a result, it appears the defendant was a leader in the instant conspiracy that involved five (5) or more participants, including Bryan Miller, Yasmin Springs, Terrance Etchison, Torrenace Sivels, Charles Alexander, and others, and was otherwise extensive; therefore, the offense level is increased four (4) levels.

J.A. at 264.

At the sentencing hearing, Lynn Barker, the investigative agent into the drug conspiracy, testified that Springs's role in the conspiracy could be characterized as that of a leader. The agent testified that Springs "was involved in obtaining the source marijuana from California," and that "[h]e [ ] recruited individuals to sell the marijuana" and "to send money back via Western Union to California for pay-

ment of the marijuana." J.A. at 148. At the end of the hearing, the district court concluded simply that Springs "did hold a leadership position in the conspiracy as defined by the United States Sentencing Guidelines." J.A. at 181.

It does not seem that the district court's conclusory statement that Springs held a leadership role suffices as the necessary fact-finding to support the enhancement, as it is not possible to determine why the district court opted for the four-level organizer or leader enhancement in U.S.S.G. § 3B1.1(a), as opposed to the three-level manager or supervisor enhancement in U.S.S.G. § 3B1.1(b). This case is similar to the scenario involved in *United States v. Darwich*, 337 F.3d 645 (6th Cir.2003), where we remanded this very same issue because of the district court's adoption of the factual findings in the PSR without making its own determinations. *Id.* at 666.

In *Darwich*, the defendant objected to the PSR recommendation of a four-level increase for his leadership role in the offense. At sentencing, the district court agreed with the PSR and overruled the defendant's objection without making any specific findings or supplying any detailed reasoning. On appeal, the defendant challenged the district court's failure to make "specific factual findings on the question of leadership and [reliance] on the PSR in deciding to apply the enhancement." *Id.* This court pointed out that pursuant to the version of Fed R.Crim. P. 32(c)(1) in place at the time of sentencing, "[f]or each matter controverted, the court must make either a finding on the allegation or a determination that no finding is necessary because the controverted matter will not be taken into account in, or will not affect, sentencing." *Id.* (quoting Fed.R.Crim.P. 32(c)(1)).[3] We noted that "the purpose of

---

3. Fed. R. Crim P. 32(c)(1) was later amended and replaced with Rule 32(i)(3)(B), which

this rule was 'to ensure that sentencing is based on reliable facts found by the court itself after deliberation,' and thus, the district court cannot 'summarily adopt the factual findings in the presentence report or simply declare that the facts are supported by a preponderance of the evidence.'" *Darwich*, 337 F.3d at 666 (quoting *United States v. Tarwater*, 308 F.3d 494, 518 (6th Cir.2002)).

The problem in *Darwich* presents itself in this case. The district court has made no findings from which one can determine why it assessed Springs a four-level increase as opposed to a three-level increase. Accordingly, the issue of the proper aggravating-role enhancement under § 3B1.1 must be remanded for further fact-finding.

I respectfully dissent. Since this case was argued, *Blakely v. Washington*, —— U.S. ——, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), was decided. The parties may wish to explore what effect, if any, that decision has on the instant case.

now provides that "for any disputed portion of the presentence report or other controverted matter," the court must "rule on the dispute or determine that a ruling is unnecessary either because the matter will not affect sentencing, or because the court will not consider the matter in sentencing." Fed.R.Crim.P. 32(i)(3)(B).