**NOT RECOMMENDED FOR PUBLICATION**
File Name: 07a0321n.06
Filed: May 8, 2007

**No. 05-6769**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| | ) | THE WESTERN DISTRICT OF |
| PATRICK D. MAXWELL, | ) | TENNESSEE |
| | ) | |
| Defendant-Appellant. | ) | |

Before:  SILER and SUTTON, Circuit Judges; JORDAN, District Judge.[*]

**SILER**, Circuit Judge.  Defendant Patrick Maxwell appeals his sentence following his guilty plea for conspiring to sell cocaine, money laundering, and structuring financial transactions to evade reporting requirements.  Maxwell argues that the district court erred when it sentenced him based on factual findings that were neither admitted nor proved to a jury beyond a reasonable doubt.  Maxwell objects to the fact-finding undertaken by the district court concerning the drug quantity and his continued involvement in criminal activity after he entered his guilty plea.  He also challenges the district court's basis for denying a reduction for accepting responsibility.  We AFFIRM.

**BACKGROUND**

---

[*]The Honorable R. Leon Jordan, United States District Judge for the Eastern District of Tennessee, sitting by designation.

As a civilian employee with the Memphis Police Department ("MPD"), Maxwell and other MPD employees conspired to steal and re-distribute drugs, primarily cocaine, stored in the MPD property and evidence room. Maxwell laundered a portion of the proceeds from the drug sales by depositing them into bank accounts. Each deposit was under $10,000, presumably to avoid the filing of Currency Transaction Reports and detection by law enforcement. Maxwell also used the proceeds to purchase personal and real property, including a residence for him and his wife in Georgia.

Maxwell was arrested in 2003. He signed a written confession detailing his participation in the drug conspiracy. In 2004, he pleaded guilty to conspiring to distribute cocaine and cocaine base, in violation of 21 U.S.C. § 846. That same day, he also pleaded guilty to charges contained in an Information filed with the plea agreement in his drug conspiracy case. These charges included money laundering, in violation of 18 U.S.C. §§ 2 and 1956(a)(1)(A)(i); and structuring transaction to evade reporting requirements while violating another law, in violation of 18 U.S.C. § 2 and 31 U.S. C. §§ 5324(a)(3), 5322(b).

As part of his plea agreement, Maxwell agreed to forfeit the Georgia residence he acquired with proceeds from the drug sale. However, prior to sentencing, Maxwell sought to prevent the forfeiture by attempting to convey the property to a third party, Clifton Hodges, with the agreement that Hodges would "re-sell" the property back to the Maxwell's mother at a later time. After authorities learned of this transaction, Maxwell was arrested and his bond was revoked.

At sentencing, the district court set Maxwell's base offense level at 38 because the amount of drugs involved more than 30,000 kilograms of marijuana.[1] The offense level was increased to 40 because Maxwell was also convicted of violating 18 U.S.C. § 1956. The district court refused to grant Maxwell a two-level reduction for acceptance of responsibility because he attempted to thwart the plea agreement by conveying the Georgia residence that was subject to forfeiture. The court ultimately sentenced Maxwell to 292 months, 210 months, and 120 months, concurrently, on the various charges.

## DISCUSSION

Maxwell argues that the district court violated *United States v. Booker*, 543 U.S. 220 (2005), because it made factual findings that he participated in transactions involving more than 30,000 kilograms of marijuana and that he was not entitled to an acceptance of responsibility reduction because he continued to engage in criminal activity in an effort to thwart his plea agreement. We review an alleged *Booker* violation that was not raised before the district court for plain error. *See United States v. Paige*, 470 F.3d 603, 611 (6th Cir. 2006).

The district court did not plainly err in sentencing Maxwell based on the finding that his transactions involved more than 30,000 kilograms of marijuana. Notwithstanding Maxwell's meritless challenge to a district court's ability to make factual findings in a post-*Booker* sentencing regime, discussed below, his challenge to the drug quantity fails for two additional reasons. First,

---

[1] The district court used the amount of cocaine and marijuana in this case and converted this amount to arrive at its conclusion that the transaction involved more than 30,000 kilograms of marijuana.

he signed a statement of facts in connection with his guilty plea in which he admitted to stealing over 200 kilograms of cocaine while working in the MPD property and evidence room and later obtaining more than 200 kilograms of cocaine after his employment ended.[2]  Second, Maxwell did not object to his Presentence Report ("PSR"), which stated that his crimes involved in excess of 30,000 kilograms of marijuana.  Thus, the district court was entitled to use these facts to compute Maxwell's sentence.  *See United States v. Pruitt*, 156 F.3d 638, 648 (6th Cir. 1998) (holding that no objection to a PSR constitutes "an express admission of the amount and type of drugs attributed to [the defendant] in the PSR").

Maxwell's claim that the district court impermissibly engaged in judicial fact-finding when it denied him a reduction for acceptance of responsibility is similarly without merit.  The Sixth Amendment is not implicated where the Guidelines are merely advisory.  *Booker*, 543 U.S. at 233.  We have consistently noted that "*Booker* did not eliminate judicial fact-finding in sentencing in cases where a defendant plead[s] guilty."  *See, e.g., United States v. Williams*, 411 F.3d 675, 678 (6th Cir. 2005).

In this case the district court clearly understood the advisory nature of the guidelines, stating, "Under the guidelines, using them as an assistive, excuse me, as advisory . . . ."  The district court found by a preponderance of the evidence that Maxwell was involved in continued criminal activity which prohibited granting a reduction for acceptance of responsibility.  This decision was not error.  *See United States v. Mickens*, 453 F.3d 668, 673 (6th Cir. 2006) (finding that, in terms of judicial

---

[2]This amount of cocaine, when converted to weight in marijuana, is approximately 80,000 kilograms.  Thus, the admitted drug quantity alone is sufficient to support the district court's finding.

fact-finding post-*Booker*, "it is well established that the preponderance standard does not violate *Booker*, so long as the trial court appreciates that the guidelines are advisory, not binding").

Similarly, the district court's denial of Maxwell's request for an acceptance of responsibility reduction was not clearly erroneous. USSG § 3E1.1(a) provides that a defendant should receive a two-level reduction in his base offense level if he "clearly demonstrates acceptance of responsibility for his offense." One of the factors in deciding if the defendant has accepted responsibility for his criminal conduct is whether he has voluntarily terminated or withdrawn from his criminal conduct or associations. USSG § 3E1.1, Application Note 1(b).

Here, the district court expressly cited this factor in denying the reduction. Specifically, it found that after Maxwell entered into the plea agreement in which he agreed to forfeit his Georgia residence, he attempted to prevent the forfeiture of his house by engaging in a sham transaction with Hodges. After Maxwell was arrested, he gave a statement admitting that he purchased the Georgia residence with drug proceeds. The government introduced evidence at sentencing, including a fax and email between Maxwell and Hodges, as well as testimony by FBI Special Agent Eric McCraw, detailing Maxwell's plan to sell the house to Hodges and, in turn, have him re-sell it to Maxwell's mother. Despite Maxwell's argument that the sale of the residence was solely at the direction of his wife, the district court also heard evidence that during the closing of the house, Maxwell's wife conversed with him by telephone.

AFFIRMED.