**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 08a0325n.06
Filed: June 9, 2008

**Case No. 05-6428**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE WESTERN |
| SCOTT CRAWFORD, | ) | DISTRICT OF TENNESSEE |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |
| _____ | ) | |
| | ) | |
| | ) | |

**BEFORE:  BOGGS, Chief Judge; BATCHELDER and GRIFFIN, Circuit Judges.**

**ALICE M. BATCHELDER, Circuit Judge.**  Defendant Scott Crawford appeals his sentence of 71 months, arising from guilty pleas to multiple counts of conspiracy in violation of 18 U.S.C. § 371, obstruction of justice in violation of 18 U.S.C. §§ 1510(a) and 1512(c)(2), bribery in violation of 18 U.S.C. § 666(a)(2), aiding and abetting in violation of 18 U.S.C. § 2, possession of a firearm with an altered or obliterated serial number in violation of 18 U.S.C. § 922(k), money laundering in violation of 18 U.S.C. §§ 1956 and 1957, and bank larceny in violation of 18 U.S.C. § 2113(a).  Crawford was also indicted on, but did not plead guilty to, counts of possession of cocaine base with the intent to distribute and aiding and abetting in violation of 18 U.S.C. § 2 and 21 U.S.C. § 841(a)(1), and a count of conspiring to possess cocaine with the intent to distribute in violation of 21 U.S.C. § 846.  Crawford argues that the district court violated his right to a jury trial

by making factual findings using a preponderance-of-the-evidence standard, and also that the district court imposed an unreasonable sentence. Because we conclude that none of Crawford's arguments are meritorious, we AFFIRM Crawford's conviction and sentence.

## I. BACKGROUND

At all times relevant to this case, Crawford was a Memphis attorney, who obtained his law degree in 1994. In his law practice, Crawford focused on criminal defense and acting as a sports agent.

On two occasions, in June and July of 2002, Crawford laundered proceeds of drug sales through his escrow account. The drug proceeds belonged to Patrick Maxwell, an ex-Memphis Police Officer who has since pleaded guilty to a number of charges, including stealing and distributing narcotics from the Memphis Police Department Property and Evidence Room. *See United States v. Maxwell*, 233 F. App'x 433 (6th Cir. 2007) (affirming Maxwell's 292-month sentence). Maxwell wanted to invest in the stock market, but wanted to avoid the suspicion that would arise if he deposited large sums of cash in a bank. So, through a third party, Maxwell would give the cash to Crawford, who would deposit it in the escrow account for his legal practice. From this account, Crawford would draw cashier's checks payable to Prudential Securities. The cashier's checks would then be deposited in a brokerage account controlled by Maxwell. Both the third party and Crawford would receive a fee for their "service."

In the first such "transaction," $81,500 was deposited into Maxwell's brokerage account; the second transaction involved a deposit of $50,000. Crawford admits he suspected that this second transaction involved proceeds from drug sales, but maintains he did not have a similar concern about the first transaction. Crawford admits, however, that had he gone to trial, the evidence would have

2

established that he had been "willfully blind" to the source of the money.

In 2003, as part of a separate criminal scheme, Crawford committed bank larceny by assisting third parties in cashing checks that listed neither Crawford nor these other individuals as authorized payees. The checks were made payable to medical services providers and were issued by the State of Tennessee as part of the Criminal Injury Compensation Program, which is intended to defray the pecuniary losses suffered by victims of crime or the dependents of deceased victims. As part of this program, two of Crawford's clients, Danyell Cannady and Yorel Allen, obtained checks meant to cover medical services obtained by Cannady and Allen. Although the checks were made payable to medical services providers, Crawford took the checks and, with Allen's or Cannady's signature, deposited them into his law-related escrow account. From this account, Crawford drew counter checks — bank checks for the use of customers making a withdrawal — which he and either Allen or Cannady endorsed. Crawford then gave cash to Cannady and Allen for part of the amount of the counter check and retained the rest, thus enabling them to convert checks for medical services into cash that could be freely spent. In the case of Allen, Crawford received $5-6,000 that he claimed Allen owed him for legal services; for cashing Cannady's check, Crawford kept "a couple thousand dollars" as a fee.

In addition to the money laundering and bank larceny schemes, Crawford also obstructed justice by bribing two Memphis Police officers, Lt. Clark and Det. Wright. In February of 2004, Crawford entered into a number of schemes with these officers to manipulate the justice system to the benefit of two of his clients, Jeffrey Holliday ("Holliday") and Eric Holley ("Holley"). Unfortunately for Crawford, these officers were undercover, and only posing as corrupt officers.

One of these bribery schemes involved Crawford's efforts to get a firearms charge against

3

Holley dismissed. Holley, a convicted felon, was arrested on February 8, 2004, after officers stopped a car in which he was traveling and found inside the car a gun and a picture of Holley holding two pistols, one of which resembled that gun. The scheme to get the case dismissed involved Crawford's giving Lt. Clark $10,000, in return for which Clark would remove the photographic evidence from the evidence room and falsely report that it had been stolen. Also as part of the plan, Crawford produced a juvenile with a "clean record" who, in a written statement transcribed by Det. Wright, claimed ownership of the gun. Lt. Clark and Crawford explicitly discussed the fact that this statement was false. As part of the sting operation the state court case against Holley was dismissed,[1] and the $10,000 bribe was delivered by Crawford in two installments — the first paid by money withdrawn from Crawford's bank account, and the second with money from both Crawford and Holley.

In another scheme, Lt. Clark agreed to convince federal prosecutors in a then-pending criminal case that Holliday was entitled to a downward departure under U.S.S.G. § 5K1.1 for fictitious assistance to law enforcement officers. Crawford and Clark agreed on a $7,500 bribe, $3,500 of which Crawford delivered in cash. Yet another bribery scheme involved Lt. Clark's agreeing to set up one of Holliday's fellow gang members whom Holliday wanted out of the way. As part of this scheme, Crawford and Holliday supplied Clark with a pistol with the serial number obliterated and two shipments of crack cocaine, one of 11.7 grams and the other of 10.7 grams.

These activities resulted in two indictments against Crawford. The first, Case No. 04-20103 ("Case 1"), which named Crawford, Holley, and Holliday as defendants, charged Crawford with

---

[1] It is not entirely clear whether the state court case was actually dismissed, or if a state authority merely told Crawford that the case was (or was going to be) dismissed.

4

conspiracy, obstruction of justice, bribery, aiding and abetting, possession of a firearm with an altered or obliterated serial number, and possession of cocaine base with intent to distribute. The second indictment, Case No. 04-20150 ("Case 2"), charged Crawford with multiple counts of money laundering and bank larceny.

Crawford entered guilty pleas in both cases. In Case 1, he pleaded guilty to conspiracy, obstruction of justice, bribery, aiding and abetting, and possession of a firearm with an altered or obliterated serial number (Counts 2, 3, 4, 5, 6, 7, and 9). Crawford pleaded guilty to all counts in Case 2, all of which were charges of money laundering and bank larceny (Counts 1-12; 13-15). A fifteen-page statement of facts accompanied the plea.

Crawford was sentenced to 71 months' incarceration on each of the counts in Case 2 and various of the counts of aiding and abetting, bribery, and obstruction of justice in Case 1, and 60 months on each of the remaining counts in Case 1, all of the terms of incarceration to be concurrent. Crawford also was sentenced to three years' supervised release and ordered to pay a $2,100 special assessment. *Id*.

## II. THE DISTRICT COURT DID NOT ERR BY MAKING FACTUAL FINDINGS USING A PREPONDERANCE-OF-THE-EVIDENCE STANDARD

We review de novo Crawford's constitutional challenge to his sentence, *United States v. Beverly*, 369 F.3d 516, 536 (6th Cir. 2004).

Crawford argues that the district court's improper use of judicial fact-finding violated his right to a jury trial. He argues that, although he did admit to committing the underlying offenses of money laundering, obstruction of justice, and bank larceny, he did not admit to certain facts used by the district court to increase his guideline range. Crawford claims that these increases were

5

unconstitutional because (1) the judge improperly used the preponderance-of-the-evidence rather than the beyond-a-reasonable-doubt fact-finding standard, and (2) the resulting sentence after enhancements was beyond the "statutory maximum" for *Apprendi* purposes. With respect to the latter, Crawford contends that *Cunningham v. California*, 127 S.Ct. 856 (2007), established that the "statutory maximum" for *Apprendi* purposes, "is the guideline range which can be determined solely based on the defendant's admission or the jury verdict," and he argues that the "statutory maximum" for his money laundering charges was exceeded when the district court applied the base offense level adjustments of U.S.S.G. § 2B1.1 (amount of funds laundered) and U.S.S.G. § 2S1.1(B)(1)(F) (laundered funds were proceeds from illegal activity).

Crawford clearly misconstrues the law. First, this court has "repeatedly held since *Booker* that district judges can find the facts necessary to calculate the appropriate Guidelines range using the same preponderance-of-the-evidence standard that governed prior to *Booker*." *United States v. Ferguson*, 456 F.3d 660, 665 (6th Cir. 2005). Second, Crawford's characterization of what constitutes the "statutory maximum," and his argument based on that characterization, are without support in the law. The Supreme Court has stated that "[t]his Court's Sixth Amendment cases do not automatically forbid a sentencing court to take account of factual matters not determined by a jury and to increase the sentence in consequence." *Rita v. United States*, 127 S.Ct. 2456, 2465-66 (2007). As we have explained:

> *Cunningham* addressed the question of whether, under California's sentencing scheme, a defendant may be sentenced to a term of imprisonment above the statutory maximum based on a fact not found by a jury or admitted by the defendant, but rather on the basis of facts that are found by a judge and established by a preponderance of the evidence. The Court answered in the negative, reaffirming its holding in *Apprendi* . . . that "any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a

6

reasonable doubt."

*United States v. Jeross*, 521 F.3d 562, 583 (6th Cir. 2008) (quoting *Cunningham*, 127 S. Ct. at 864 (quoting *Apprendi*, 530 U.S. at 490)) (internal citations omitted). Indeed, the problem in *Cunningham* was not that the California sentencing system allowed judges to increase sentences based on judge-found facts; it was that judges were *not* allowed to *deviate* from a statutorily prescribed sentence *unless* they found facts justifying such a departure. *Cunningham*, 127 S. Ct. at 876. Under California's system, prior to finding facts sufficient to justify an upward departure, the trial judge had no discretion and was constrained by a true statutory maximum sentence. As the *Cunningham* Court recognized, such a system is clearly different from the federal advisory system in place post-*Booker*, which allows judges to exercise discretion within a range of statutorily prescribed sentences. *Id*. Two of the many offenses to which Crawford pleaded guilty are money laundering offenses; the statutory maximum sentences for these offenses — 20 years under 18 U.S.C. § 1956 and 10 years under 18 U.S.C. § 1957 — are well above Crawford's total sentence of 71 months. His *Apprendi-Cunningham* argument is without merit.

## III.  THE DISTRICT COURT IMPOSED A REASONABLE SENTENCE

We review the district court's imposition of a sentence for reasonableness — both procedural and substantive. *Gall v. United States*, 128 S. Ct. 586, 597 (2007). To find a sentence procedurally reasonable, we must "ensure that the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence — including an explanation for any deviation from the Guidelines range." *Id.* If the district court's decision is procedurally sound, then

we review the substantive reasonableness of the sentence under an abuse-of-discretion standard, *id.*, affording sentences within the applicable Guidelines range the presumption of reasonableness. *United States v. Vowell*, 516 F.3d 503, 509 (6th Cir. 2008). We review the district court's application of the Sentencing Guidelines de novo and the district court's findings of fact for clear error. *United States v. Davidson*, 409 F.3d 304, 310 (6th Cir. 2005); *United States v. Tocco*, 306 F.3d 279, 284 (6th Cir. 2002).

Crawford's most serious challenge to the reasonableness of his sentence is that the district court erred in computing his offense level for obstruction of justice. Specifically, he argues that the district court erred in applying, via cross-reference, U.S.S.G. § 2X3.1, which is the guideline for the offense of "accessory after the fact." Crawford is mistaken.

The starting point for determining the base offense level for Crawford's obstruction of justice charges is U.S.S.G. § 2J1.2 (2003). Subsection (a) of § 2J1.2 provides for a base offense level of 14. However, subsection (c) provides that "[i]f the offense involved obstructing the investigation or prosecution of a criminal offense, apply § 2X3.1 (Accessory After the Fact) in respect to that criminal offense, if the resulting criminal offense level is greater than that determined above." Crawford certainly obstructed the prosecution of a criminal offense, so without question, § 2X3.1 must be considered in determining the appropriate offense level. Section 2X3.1(a) provides that the base offense level should be "6 levels lower than the offense level for the underlying offense." Application Note 1 to that guideline section defines "underlying offense" as including "the offense as to which the defendant is convicted of being an accessory."

Crawford was convicted of obstructing the prosecution of Holley for possessing a firearm after having been convicted of a felony. The applicable Guidelines section for Holley's conduct is

8

U.S.S.G. § 2K2.1. Because Holley had two prior convictions for violent felonies, the district court correctly recognized that the applicable base offense level for Holley's offense was 24. § 2K2.1(a)(2) (2003). The district court applied § 2X3.1(a) to Crawford because the resulting offense level of 18 is greater than the level 14 attributable to the offense of obstruction of justice.[2]

Crawford argues that there is no evidence establishing that he knew Eric Holley had twice been convicted of violent felonies, and therefore, pursuant to *United States v. Shabazz*, 263 F.3d 603 (6th Cir. 2001), absent a factual finding that he knew or reasonably should have known of these prior convictions, the increase in Holley's base offense level because of them cannot be used to calculate the offense level for Crawford's obstruction charges. Rather, Crawford insists, because he knew only that Holley was a convicted felon, and thus a "prohibited person" under § 2K2.1(a)(6), the proper base offense level for Holley's conduct as applied to Crawford was 14.

Crawford's reliance on *Shabazz* is misplaced. The issue in *Shabazz* was whether, in calculating the offense level for obstruction of justice, the district court could use the offense level, including enhancements, for the offense whose investigation or prosecution the instant defendant had obstructed, without first finding that the instant defendant knew or reasonably should have known of the facts supporting those enhancements. Relying on Application Note 1 to § 2X3.1 ("[a]pply the base offense level [of the underlying offense] plus any applicable specific offense characteristics that were known, or reasonably should have been known, by the defendant; see Application Note 10 of the Commentary to § 1B1.3 (Relevant Conduct)") and Application Note 10 of the Commentary to § 1B1.3 ("[i]n the case of . . . accessory after the fact, the conduct for which the defendant is

---

[2]The district court also applied § 3B1.4, a two-level enhancement for the use of a minor to commit a crime, bringing Crawford's offense level on this count to 20.

accountable includes all conduct relevant to determining the offense level for the underlying offense that was known or reasonably should have been known, by the defendant"), we held that a finding of such knowledge was required.

At issue in the case before us here, however, is Crawford's insistence that the sentencing court could not use Holley's base offense level of 24 to calculate Crawford's offense level because Crawford did not have the requisite knowledge of Holley's prior felony convictions. But Holley's prior felony convictions are intrinsic to the underlying offense itself; they are not comparable to facts upon which enhancements may be based. Nor are those prior convictions "specific offense characteristics," to which Application Note 1 is limited. Finally, Application Note 10 does "not say that . . . accountability is *limited* to conduct known or reasonably known; it merely states that . . . accountability *includes* conduct 'known' or that 'reasonably should have been known.'" *United States v. Girardi*, 62 F.3d 943, 946 (7th Cir. 1995). Accordingly, we find no error in the district court's calculation of Crawford's offense level for obstruction of justice.

Crawford advances several additional arguments to support his claim that his sentence was procedurally unreasonable, none of which we find persuasive. First, Crawford argues that the district court made a number of errors in computing the base offense level for the money-laundering charges. These arguments are all specious; Crawford specifically admitted — either in his plea or in the Statement of Facts accompanying his plea — to all of the facts necessary to support the district court's sentence on these charges. Second, Crawford argues that he should have received a three-level reduction under § 3B1.2 for a mitigating role in his offenses. But the district court explicitly found that Crawford was not entitled to this reduction because the Statement of Facts accompanying Crawford's plea clearly established him as central to both the obstruction-of-justice and money-

10

laundering schemes and in this, the district court was clearly correct. Third, Crawford claims that he should have received a three-level reduction for acceptance of responsibility under § 3E1.1, as opposed to the two-level reduction that he actually received. This argument is entirely without merit: Crawford was not entitled to the reduction because the government did not move for the additional one-level reduction as is required under § 3E1.1; Crawford did not plead guilty until after the jury had been selected in one of his trials; and Crawford was — and continues to be — inconsistent in his acceptance of responsibility, claiming that his plea is a "best interest" plea. Fourth, Crawford argues that he should have received a downward departure under § 5K2.16 for voluntarily telling authorities about the money laundering, claiming that he had called an Assistant U.S. Attorney and told him that he was suspicious of some of the money transactions he was carrying out. The record, however, does not demonstrate that Crawford ever made this argument to the district court, and we will not entertain it here. Furthermore, even if we were to address this argument, we will "not review decisions of a district court not to depart downward unless the record reflects that the district court was not aware of or did not understand its discretion to make such a departure." *United States v. Puckett*, 422 F.3d 340, 345 (6th Cir. 2005). Here, all indications show that the district court fully appreciated the breadth of its discretion in all areas of sentencing. If the court was unaware of the possible applicability of this particular departure, the fault lies with Crawford for failing to articulate his argument to the court.

Fifth, and finally, Crawford argues that the district court violated Fed. R. Crim. P. 32 by not affirmatively ruling on a number of objections he offered to the Presentence Investigation Report. Specifically, Crawford argues that the district court did not affirmatively rule on his objections to: (1) the application of U.S.S.G. § 2K2.1 (the base offense level for the underlying offense in

11

calculating Crawford's obstruction-of-justice offense level); (2) the application of U.S.S.G. § 3B1.4 (Use of a Minor to Commit a Crime); (3) the application of U.S.S.G. § 2B1.1 in calculating the amount of loss relative to the money-laundering offenses (Amount of Loss Range $120,000 to $200,000); (4) the application of U.S.S.G. § 2S1.1(b)(1) (Knowledge that Funds were Drug Proceeds); and (5) the court's failure to grant a departure under U.S.S.G. § 3B1.2 (Mitigating Role).

Federal Rule of Criminal Procedure 32(i)(3)(B) requires that a sentencing court "must — for any disputed portion of the presentence report or other controverted matter — rule on the dispute or determine that a ruling is unnecessary either because the matter will not affect sentencing, or because the court will not consider the matter in sentencing." Rule 32, we have explained, "prohibits a court faced with a dispute over sentencing factors from adopting the factual findings of the presentence report without making factual determinations of its own." *United States v. Lang*, 333 F.3d 678, 681 (6th Cir. 2003). However, there is "no reason to require a district court to make independent findings outside the PSR when the facts are undisputed." *Id.* (quoting *United States v. Treadway*, 328 F.3d 878, 886 (6th Cir. 2003)). District court errors under Rule 32 are subject to harmless error analysis. *See* Fed. R. Crim. P. 52(a) ("any error, defect, irregularity, or variance that does not affect substantial rights must be disregarded"); *see also United States v. Tiser*, 170 F. App'x 396, 399 (6th Cir. 2006) ("We review a violation of Rule 32 for harmless error"); *United States v. Springs*, 105 F. App'x 811, 816 (6th Cir. 2004) ("even if an error [under Rule 32(i)(3)(B)] occurred it was assuredly harmless"), *vacated on other grounds*, 125 S. Ct. 1712 (vacated in light of *Booker*); *United States v. Carter*, 374 F.3d 399, 408 (6th Cir. 2004) (holding that district court committed "a clear violation" of Fed. R. Crim. P. 32(i)(3)(B) but that its error was harmless), *vacated on other grounds*, 543 U.S. 1111 (vacated in light of *Booker*); *United States v. Parrott*, 148 F.3d 629, 633-34

12

(6th Cir. 1998) (holding that while the trial court "did not fully comply with Rule 32(c)(1) when it simply adopted the [presentence] report," any "error in this regard was harmless").

Each of Crawford's Rule 32 arguments is without merit for at least one of the following reasons: (1) the argument was, in fact, ruled on by the district court; (2) the argument was not presented to the district court; (3) the argument is without merit because the facts underlying it were admitted in Crawford's statement of facts that accompanied his guilty pleas or were otherwise undisputed; or (4) the argument, if correct, demonstrates only harmless error.

Having found no reason to question the procedural reasonableness of the sentence imposed by the district court, we must now review for abuse of discretion the substantive reasonableness of the sentence. *Gall*, 128 S. Ct. at 597. Because Crawford's sentence was within the applicable Guidelines range, we afford it a presumption of reasonableness. *Vowell*, 516 F.3d at 509. The record demonstrates that district court carefully considered all of the 18 U.S.C. § 3553(a) factors after hearing extensive testimony and argument with regard to them, and made an individualized assessment of the appropriate sentence. We are satisfied that the district court did not abuse its discretion in sentencing Crawford to 71 months' imprisonment.

## IV. CONCLUSION

For the foregoing reasons, we **AFFIRM**.