RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
ELECTRONIC CITATION: 2003 FED App. 0213P (6th Cir.)
File Name: 03a0213p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

UNITED STATES OF AMERICA,
  *Plaintiff-Appellee,*

v.                                         No. 02-1814

DONNA LANG,
  *Defendant-Appellant.*

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 02-00052—Richard A. Enslen, District Judge.

Submitted: June 18, 2003

Decided and Filed: June 27, 2003

Before: BOGGS and GILMAN, Circuit Judges;
MARBLEY, District Judge.*

---

### COUNSEL

**ON BRIEF:** Thomas C. Rowsey, Cumming, Georgia, for
Appellant. Thomas J. Gezon, ASSISTANT UNITED

---

* The Honorable Algenon L. Marbley, United States District Judge for
the Southern District of Ohio, sitting by designation.

STATES ATTORNEY, Grand Rapids, Michigan, for
Appellee.

---

### OPINION

---

RONALD LEE GILMAN, Circuit Judge. Donna Lang pled
guilty to a one-count information charging her with mail
fraud. The district court sentenced her to a 30-month term of
imprisonment, followed by 3 years of supervised release.
Lang appeals a sentencing enhancement under United States
Sentencing Guidelines § 3B1.3, which concerns the abuse of
a position of trust or use of a special skill. For the reasons set
forth below, we **AFFIRM** the judgment of the district court.

### I. BACKGROUND

**A. Factual background**

Hermann Miller, Inc. (HMI), a furniture manufacturing
company based in Zeeland, Michigan, employed Lang as a
trade-in specialist from January of 1982 to February of 2001.
Lang's job was to hire contractors to remove and dispose of
used office furniture from companies that had purchased new
HMI furniture. In June of 1998, Lang created an entity that
she called Style, Inc., which had a telephone answering
service and a mailing address in Memphis, Tennessee.

As HMI's trade-in specialist, Lang processed a fictitious
invoice from Style, Inc. to HMI in January of 1999 for work
that had in fact been provided by another company. She
received payment from HMI for the invoice, then waited
several months to determine whether HMI would discover the
fraud. Satisfied that HMI was in the dark, Lang began to
routinely submit fraudulent invoices. By the time HMI
discovered in the summer of 2000 that Lang was defrauding
it, she had submitted approximately 20 fraudulent invoices
involving Style, Inc. HMI suffered a total loss of over

$600,000 as the result of Lang's conduct by the time that her employment was terminated in February of 2001.

## B.  Procedural background

In March of 2002, Lang was charged in a one-count information with mail fraud, in violation of 18 U.S.C. § 1341. She pled guilty.  Her case was then referred to the United States Probation Office for a presentence investigation and report.

The Presentence Report (PSR) placed Lang's base offense level at 6, then added 14 levels for specific offense characteristics.   It next recommended a two-level enhancement based upon United States Sentencing Guidelines § 3B1.3, which concerns the abuse of a position of trust or use of a special skill.  Lang objected to this enhancement.  After a hearing, the district court overruled her objection and sentenced her to a 30-month term of imprisonment, followed by 3 years of supervised release. This timely appeal followed.

Both parties have stated that oral argument is unnecessary. Having examined the briefs and the record, we unanimously agree that "the facts and legal arguments are adequately presented in the briefs and record, and the decisional process would not be significantly aided by oral argument."  Fed. R. App. P. 34(a)(2)(C).

## II.  ANALYSIS

Lang contends that the district court erred in adopting the PSR's recommendation that her offense level should be increased two levels for abusing a position of trust.  United States Sentencing Guidelines § 3B1.3 requires such an enhancement where the defendant "abused a position of public or private trust . . . in a manner that significantly facilitated the commission of concealment of the offense."

Paragraph 25 of Lang's PSR stated: "Ms. Lang, having worked for HMI for approximately 19 years and being the only trade-in specialist, was subjected to significantly less

supervision based on her established trust and specialized position."   The PSR therefore recommended a two-level increase under § 3B1.3.  Lang's attorney objected to this recommendation.  In a letter to the probation officer, he wrote:

> Mrs. Lang certainly did steal from her employer. However, she did not abuse a position of public or private trust . . . . Since Mrs. Lang was employed as a trade-in specialist, who had to send all invoices and information to corporate headquarters for approval, we do not believe that her job was a position that held the level of trust and discretion contemplated by the commission in drafting U.S.S.G. § 3B1.3.  Thus, Mrs. Lang's Offense level should not be increased by the two levels you contend in paragraph number 25 of your Pre-Sentence Investigation Report.

The probation officer responded to this objection in an addendum to the PSR, in which he reported that he had spoken "with the Manager of Business Risk Assurance who informed this officer [that] Ms. Lang had the authority and did sign for all of her invoices. . . .  Ms. Lang's boss was not required to oversee her transactions."  At the sentencing hearing, the district court overruled Lang's objection, reasoning as follows:

> According to the Manager of Business Risk Assurance from Herman Miller [sic], Defendant Lang, although not officially designated a manager, had the authority to sign all of her invoices and was in charge of all trade-ins.  In addition, Defendant Lang's boss was not required to oversee her transactions . . . .  Due to the obvious discretionary nature of Lang's position, she was able to submit numerous false vouchers, I think twenty, for payment without obvious detection . . . .  I, therefore, find her position did hold the level of trust and discretion contemplated by the enhancement language.

Lang argues on appeal that irrespective of the merits of the enhancement, the district court committed reversible error by

relying on factual findings contained in the PSR rather than making its own determination of the facts. She points out that Rule 32 of the Federal Rules of Criminal Procedure provides that a sentencing court "must—for any disputed portion of the presentence report or other controverted matter—rule on the dispute or determine that a ruling is unnecessary . . . ." Fed. R. Crim. P. 32(i)(3)(B). In *United States v. Parrott*, 148 F.3d 629 (6th Cir. 1998), this court explained that Rule 32 "prohibits a court faced with a dispute over sentencing factors from adopting the factual findings of the presentence report without making factual determinations of its own." *Id.* at 633. According to Lang, after she objected to Paragraph 25 of her PSR, the district court could not conclude that she had abused a position of trust unless the government introduced evidence to support the enhancement.

We find her argument unpersuasive. In our opinion, the above-quoted assertion by Lang's attorney is not sufficient to give rise to a "dispute" within the meaning of Rule 32. *See United States v. Treadway*, 328 F.3d 878, 886 (6th Cir. 2003) ("We can find no reason to require a district court to make independent findings outside the PSR when the facts are undisputed.") We agree with the reasoning of the Seventh Circuit that

> [a] defendant cannot show that a PSR is inaccurate by simply denying the PSR's truth. Instead, beyond such a bare denial, he must produce some evidence that calls the reliability or correctness of the alleged facts into question. If a defendant meets this burden of production, the government must then convince the court that the PSR's facts are actually true. But the defendant gets no free ride: he must produce more than a bare denial, or the judge may rely entirely on the PSR.

*United States v. Mustread*, 42 F.3d 1097, 1102 (7th Cir. 1994) (citations and internal quotation marks omitted). Our own court, in the unpublished decision of *United States v. Dolan*, No. 95-1769, 1996 WL 599819 (6th Cir. Oct. 17, 1996), reached the same conclusion: "[A] defendant who challenges

factual allegations in the PSR [presentence report] has the burden of producing some evidence beyond a bare denial that calls the reliability or correctness of the alleged facts into question." *Id.* at *7 (alterations in original).

Nothing in *Parrott* is to the contrary. Lang is correct that the defendant in *Parrott* "contended generally that there was no evidence to support" the enhancement at issue, 148 F.3d at 633, without himself producing any evidence to call the reliability or correctness of the PSR's facts into question. This court stated that "the District Court erred by failing to make independent factual findings sufficient to support the . . . enhancement." *Id.* at 634-35. It therefore vacated the district court's imposition of the enhancement and remanded for reconsideration. The reason, however, that the district court erred in relying on the PSR in *Parrott* was not that the defendant had called the reliability or correctness of any fact in the PSR into question. Rather, this court decided that the enhancement required the existence of a crucial fact unmentioned by the PSR at all. *Id.* at 635 ("The presentence report adopted by [the district court] in support of the enhancement[]is silent on the issue."). Remand was therefore necessary to ascertain in the first instance whether that fact existed. *Parrott* thus does not establish a broad rule that any "bare-bones" objection to the PSR requires the district court to take additional evidence.

In the instant case, Lang failed to produce any evidence to support her argument that she had not abused a position of trust. She did not, for example, provide an affidavit contradicting the PSR's findings that she "was subjected to significantly less supervision based on her established trust and specialized position," or that her "boss was not required to oversee her transactions." Nor did she so testify at the sentencing hearing. *Cf. Treadway*, 328 F.3d at 884 (affirming the district court's use of the PSR to determine the quantity of drugs for which the defendant was responsible, noting that the defendant "could have offered evidence that he should be accountable for a smaller amount").

Instead, she did no more than present her attorney's unsupported letter contesting a material fact in the original PSR and denying the applicability of § 3B1.3. Under these circumstances, the district court was not required to take additional evidence, and could properly rely on the facts found in the revised PSR to evaluate the propriety of the enhancement. *See United States v. Wiant*, 314 F.3d 826, 832 (6th Cir.) (holding that the district court did not err in making a finding on the basis of the PSR, without taking additional evidence, where "[a]lthough [the defendant] weakly reiterated his position that the reduction in donations was merely speculative, he offered no reason whatsoever to contradict the evidence in the presentence report, and the sentencing judge found it credible"), *cert. denied*, 123 S. Ct. 1774 (2003).

Lang argues alternatively that, on the merits, the enhancement should not have been applied in her case. We review the district court's application of § 3B1.3 under the "clearly erroneous" standard where, as here, it is fact-bound. *Buford v. United States*, 532 U.S. 59, 66 (2001) (affirming the use of a deferential standard of review to the district court's fact-bound application of the Sentencing Guidelines); *United States v. Jackson-Randolph*, 282 F.3d 369, 389-90 (6th Cir. 2002) (holding that where the district court's application of the Sentencing Guidelines is fact-bound, both factual findings and application of the Guidelines to those facts should be set aside only if they are clearly erroneous). *But see United States v. Gilliam*, 315 F.3d 614, 617 (6th Cir. 2003) (citing, in dicta, pre-*Buford* precedent for the proposition that "[w]e review de novo the district court's determination that a defendant occupied a position of trust for the purposes of the Sentencing Guidelines").

The application notes for § 3B1.3 provide in pertinent part as follows:

"Public or private trust" refers to a position of public or private trust characterized by professional or managerial discretion (*i.e.*, substantial discretionary judgment that is ordinarily given considerable deference). Persons

holding such positions ordinarily are subject to significantly less supervision than employees whose responsibilities are primarily non-discretionary in nature. For this adjustment to apply, the position of public or private trust must have contributed in some significant way to facilitating the commission or concealment of the offense (*e.g.*, by making the detection of the offense or the defendant's responsibility for the offense more difficult).

U.S. Sentencing Guidelines Manual § 3B1.3, cmt. n.1. As both the district court and the PSR noted, Lang's position allowed her the discretion to hire independent companies and to submit their invoices, and no one at HMI was required to oversee her transactions. These factors undoubtedly facilitated both the commission and the concealment of the offense. We therefore find no error—clear or otherwise—in the district court's decision to apply the two-level enhancement of § 3B1.3 in this case.

### III. CONCLUSION

For all of the reasons set forth above, we **AFFIRM** the judgment of the district court.