**File Name:  05a0783n.06**
**Filed:  September 8, 2005File Name**
**:  05a0783n.06**
**Filed:  September 8, 2005NOT RECOMMENDED FO**
**R FULL-TEXT PUBLICATION**

**No. 03-6354**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| -vs- | ) | STATES DISTRICT COURT FOR THE |
| | ) | EASTERN DISTRICT OF TENNESSEE |
| MATTHEW JOCK, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |

Before: NELSON and SUTTON, Circuit Judges; WELLS, District Judge[*]

Wells, District Judge.  Appellant Matthew Jock contends that the district court wrongfully considered certain evidence in calculating his guideline range when imposing his sentence.  Because the supposedly offending evidence was either irrelevant or appropriately handled, we conclude that the district court did not err in calculating Mr.

---

[*] The Honorable Lesley Wells, United States District Judge for the Northern District of Ohio, sitting by designation.

Jock's guideline range.  However, we remand his case for re-sentencing because the district court plainly erred in treating the guidelines as mandatory.[1]

I.

On 28 January 2003, a federal grand jury issued a six-count indictment, charging Matthew Jock with several drug offenses.  On 14 January 2003, prior to Mr. Jock's indictment on drug charges, officers from the Shelbyville Police Department responded to a disturbance at Room 219 of the Country Hearth Inn in Shelbyville, Tennessee.  While some of the circumstances of the encounter are not well-developed in the record, the parties do not dispute that the officers found four people, including Mr. Jock, in the hotel room, that they conducted a pat-down search of Mr. Jock, discovering $6,382, and that, during their search of the room itself, the officers found two duffel bags containing various drugs and a Ruger 9 mm semi-automatic pistol.  Although the hotel search took place prior to his indictment, Mr. Jock was not charged with any offenses linked to the drugs or gun seized on 14 January 2003.

On 21 April 2003, defendant Matthew Jock pled guilty to count one of the indictment, conspiracy to distribute 50 grams or more of crack cocaine, a violation of 21 U.S.C. § 846.[2]  In pleading guilty, Mr. Jock admitted to purchasing, since February 2002, "at least fifty grams of crack cocaine and several ounces of cocaine powder" and then re-selling it.  While his plea agreement did not refer to any of the contraband

---

[1]  On 10 March 2005, we granted the government's motion to hold this case in abeyance pending the issuance of the mandate in *United States v. Oliver*, Case No. 02-2126.  As the mandate was issued in *Oliver* on 15 July 2005, we will now proceed to the merits of the appeal.

[2]  The government dismissed the other five counts of the indictment at sentencing.

seized during the hotel search, the probation officer included the drugs obtained from the hotel search in calculating Mr. Jock's base offense level of 34, as set forth in U.S.S.G. § 2D1.1(c)(3). Recommending a 2-level enhancement based on the weapon discovered during the hotel room search, pursuant to U.S.S.G. § 2D1.1(b)(1), and assuming a 3-level reduction for acceptance of responsibility, U.S.S.G. § 3E1.1(a) and (b), the pre-sentence report ("PSR") concluded that Mr. Jock's total offense level was 33. After receiving the PSR, Jock objected to several paragraphs which described the hotel search, specifically disagreeing with the use of the drugs and gun obtained from that search in calculating his offense level. Mr. Jock also filed a motion to suppress all evidence resulting from that seizure contending that it was a warrantless search in violation of the Fourth Amendment.

At the sentencing hearing, the trial judge found it unnecessary to rule on the legality of the hotel room search,[3] overruled Mr. Jock's objections to the PSR, and found that both the drugs and the gun from the hotel room were properly included in the guideline calculations. Adopting the total offense level of 33 as suggested by the probation officer and finding Mr. Jock to be in criminal history category II, the district court determined that the appropriate guideline range was 151-188 months. However, based on the government's request for a downward departure for Mr. Jock's substantial

---

[3] The district court concluded that the legality of the search was immaterial. Relying on *United States v. Jenkins*, 4 F.3d 1338 (6th Cir. 1993), the district court stated that, because the drugs were not seized for the purpose of enhancing Mr. Jock's sentence, Mr. Jock could not object to the use of the drugs in calculating his guideline range on the basis that they were illegally seized. Mr. Jock did not seriously contest this issue in his brief or during oral arguments. However, to the extent that he continues to argue that the district court needed to resolve the legality of the search, he is in error.

assistance, pursuant to U.S.S.G. § 5K1.1, the district court elected to depart from the guideline range and sentence Mr. Jock to a 130 month term of imprisonment.

## II.

On appeal, Mr. Jock argues that the district court erred by including the drugs obtained from the hotel search as relevant conduct and in enhancing his sentence by to levels because of the firearm. In essence, he contends that neither the drugs nor the gun from the hotel room were properly attributable to him and therefore should not have been considered in fashioning his sentence under the guidelines.

We need not address the substance of Mr. Jock's contentions regarding the drugs seized from the hotel room because their inclusion had no effect on the guideline range given the drug amounts he admitted to in his plea agreement and in his 12 April 2002 statement to law enforcement officials. The guidelines provide for a base offense level of 34 for drug amounts equivalent to at least 3,000 kg but less than 10,000 kg of marijuana. U.S.S.G. § 2D1.1(c)(3). Excluding the drugs seized from the hotel room, Mr. Jock nonetheless admitted to a drug amount equivalent to 3436.02 kg of marijuana. Accordingly, with or without the drugs from the hotel room, Mr. Jock's base offense level would have been 34. Because Mr. Jock's guideline range was not altered by the inclusion of the drugs from the hotel room, the district court's error, if any, was harmless. *United States v. Gill*, 348 F.3d 147, 155 (6th Cir. 2003) (acknowledging any error as to drug amount is harmless where "the sentence either way is subject to the same guideline range"); see also *United States v. Charles*, 138 F.3d 257, 268 (6th Cir. 1998).

Mr. Jock's argument regarding the district court's application of the 2-level enhancement for the firearm is likewise unavailing. A district court's finding that a particular enhancement applies is a factual finding subject to clear error review. *United States v. Ables*, 167 F.3d 1021, 1035 (6th Cir. 1999); *United States v. Johnson*, 344 F.3d 562, 565 (6th Cir. 2003). A factual finding is clearly erroneous where "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Ables*, 167 F.3d at 1035. When, as here, a defendant contests the applicability of an enhancement provision, the government must establish the enhancement factors by a preponderance of the evidence. *Id.* In the context of a Section 2D1.1(b)(1) enhancement,[4] the government bears the burden of proving by a preponderance of the evidence that Mr. Jock actually or constructively possessed the firearm. *Johnson*, 344 F.3d at 565-67. In a conspiracy context, the government need only show that "a member of the conspiracy possessed the firearm and that the member's possession was reasonably foreseeable by other members in the conspiracy." *Id.* at 565. Once the government proves possession, the burden shifts to the defendant to show that it was "clearly improbable that the weapon was connected with the offense." *Id.* at 565-67 (*quoting* U.S.S.G. § 2D1.1(b)(1), cmt. 3); see also *United States v. Bowden*, 380 F.3d 266, 273 (6th Cir. 2004).

Because Mr. Jock does not seriously contest its connection to the offense, the determinative issue is whether the district court clearly erred in finding, by a preponderance of the evidence, that Jock actually or constructively possessed the

---

[4] Section 2D1.1(b)(1) provides that a defendant's base offense level for a drug trafficking offense must be increased by two levels "[i]f a dangerous weapon (including a firearm) was possessed."

firearm.  Jock suggests that the district court erred in relying solely on factual allegations taken from the presentence report and not making a factual finding beyond the report once defendant objected to that allegation.  In so doing, Jock incorrectly states the law of this Circuit.  A defendant cannot show that a presentence report is inaccurate simply by denying its truth; rather, he bears the "burden of producing some evidence beyond a bare denial that calls the reliability or correctness of the alleged facts into question." *United States v. Lang*, 333 F.3d 678, 681-82 (6th Cir. 2003).  When a defendant merely contests a material fact through an unsupported assertion by his attorney, the district court is "not required to take additional evidence" and can properly rely on facts in the presentence report to evaluate the propriety of the enhancement. *Id.* at 682.  In this case, Mr. Jock's attorney, at the sentencing hearing, merely asserted that "[i]t was not his gun" and offered an alternative interpretation based on the facts in the presentence report.  Although he sought a hearing on his motion to suppress, Mr. Jock did not seek to put on evidence regarding his connection, or lack thereof, to the gun.  Given the facts alleged in the PSR, the district court did not clearly err in applying the enhancement.

After Mr. Jock was sentenced and while his case was on appeal, the Supreme Court decided *United States v. Booker*, 125 S. Ct. 738 (2005), a case which significantly altered the landscape of federal sentencing.  In *Booker*, the Supreme Court concluded that the Sixth Amendment as construed in *Blakely v. Washington* applied with equal force to the federal sentencing guidelines such that "[a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." *Id.* at 755-56.  In

6

order to avoid Sixth Amendment concerns raised by the mandatory nature of the sentencing guidelines, the Supreme Court severed two provisions of the Sentencing Reform Act of 1984 which had previously made the guidelines mandatory, thereby rendering the guidelines advisory. *Id.* at 756-57 and 764-65.

Although the district court made factual findings that certain drugs were attributable to Mr. Jock and that supported a two-level enhancement for possession of a dangerous weapon, these factual findings do not run afoul of the Sixth Amendment because Mr. Jock's ultimate sentence of 130 months does not exceed the maximum authorized by the facts established by his guilty plea and/or own admissions. *Id.* at 755-56. As noted above, the drugs from the hotel room had no effect on Mr. Jock's guideline range. Although the firearm enhancement increased Mr. Jock's guideline range from 121-151 months to 151-181 months, enhancement of a guideline range by court fact-finding does not automatically translate into a Sixth Amendment violation. When, as here, the sentence ultimately imposed is within the guideline range that excludes the tainted enhancement, no Sixth Amendment problem arises. By departing downward to a sentence of 130, the district court imposed a sentence within the guideline range which does not reflect any enhancement based on judge-found facts.

Notwithstanding the lack of a Sixth Amendment violation, it is nonetheless clear that the district court understandably, but erroneously, sentenced Mr. Jock based on the assumption that the guidelines were mandatory. Because Mr. Jock did not raise this issue below, the district court's treatment of the guidelines as mandatory is subject to review for plain error. *United States v. Barnett*, 398 F.3d 516, 525 (6th Cir. 2005). Under that standard of review, we may correct an error only if it is plain under current

7

law, if it affects the defendant's substantial rights, and if it seriously affects the fairness, integrity, or public reputation of the proceedings. *United States v. Schulte*, 264 F.3d 656, 660 (6th Cir. 2001); *United States v. Oliver*, 397 F.3d 369, 377-78 (6th Cir. 2005).

In light of *Booker*, application of the sentencing guidelines as mandatory was plain error here. *Barnett*, 398 F.3d at 526. Moreover, under *Barnett*, we presume that the district court's error in failing to treat the guidelines as advisory affects the defendant's substantial rights. *Id.* at 527-29; *see also United States v. Trammel*, 404 F.3d 397, 401-403 (6th Cir. 2005). Although this presumption of prejudice may be rebutted if the record "contains clear and specific evidence that the district court would not have, in any event, sentenced the defendant to a lower sentence under an advisory Guidelines range," *United States v. Hudson*, 405 F.3d 425, 444 (6th Cir. 2005) (*quoting Barnett*, 398 F.3d at 529), there is no such evidence in this case. Given the district court's willingness to depart from what it perceived to be mandatory guidelines, based on the government's 5K1.1 motion, it is possible that the district court would have imposed an even lower sentence if it had understood the guidelines as advisory. Finally, when, as here, there exists the possibility that a defendant might have received a lower sentence absent an erroneous assumption regarding the nature of the guidelines, questions of fairness and integrity arise and prudence dictates a remand for re-sentencing. *Barnett*, 398 F.3d at 529-30; *see also Hudson*, 405 F.3d at 445 (explaining that "the court of appeals ought not to assume that a defendant's sentence under the new discretionary regime would be the same and therefore that a remand is superfluous"); *Oliver*, 397 F.3d at 381 n.3 ("We would be usurping the discretionary

8

power granted to the district courts by *Booker* if we were to assume that the district court would have given [the defendant] the same sentence post-*Booker*").

Accordingly, due to the district court's plain error in treating the guidelines as mandatory, we vacate Jock's sentence and remand for re-sentencing.

III.

Although the district court did not clearly err in its calculation of Mr. Jock's guideline range, it plainly erred in treating the guidelines as mandatory when sentencing Mr. Jock. Accordingly, Jock's sentence is vacated and this case is remanded to the district court for resentencing.