NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 15a0332n.06

No. 14-1458

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | **FILED** |
| | ) | May 06, 2015 |
| | ) | DEBORAH S. HUNT, Clerk |
| v. | ) | |
| | ) | ON APPEAL FROM THE |
| JEFFREY VICTOR MARCHIONE, | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE WESTERN |
| | ) | DISTRICT OF MICHIGAN |
| Defendant-Appellant. | ) | |
| | ) | |

Before: KETHLEDGE and WHITE, Circuit Judges; LUDINGTON, District Judge.[*]

LUDINGTON, District Judge. Jeffrey Marchione pleaded guilty to two counts of distribution of child pornography and one count of possession of child pornography after federal agents discovered more than 40,000 images and 1,600 videos depicting child pornography on his computer. The district court sentenced Marchione to 360 months' imprisonment, followed by lifetime supervised release. Marchione appeals his sentence, arguing that (1) the district court was obligated to conduct an evidentiary hearing at his sentencing to address a sentencing guideline issue; (2) he received ineffective assistance from counsel in accepting the plea agreement; and (3) his sentence is substantively unreasonable. For the reasons below, we AFFIRM.

---

[*] The Honorable Thomas L. Ludington, United States District Judge for the Eastern District of Michigan, sitting by designation.

**I.**

On January 5, 2012, an undercover agent in Illinois logged on to a peer-to-peer file sharing program and observed that an individual with the username "Jminstlmo" was also logged on. The agent browsed through one of Jminstlmo's shared folders and discovered that it contained images depicting child pornography. After downloading 119 images and 7 video files from the shared folder, the undercover agent captured Jminstlmo's internet protocol ("IP") address. PSR ¶ 16.

Another undercover agent in New York also accessed child pornography in Jmintslmo's shared folder and downloaded 72 images of child pornography. The agent then began chatting with Jminstlmo, who expressed an interest in boys between the ages of 11 and 14. Jminstlmo boasted that he had sexual contact with boys between the ages of 12 and 17. He also hinted that he had had sexual contact with the 12-year-old friend of one of his children, and that he was nervous that the boy might tell someone about it. PSR ¶ 19–20.

The next day, on January 6, 2012, an administrative subpoena was served on the internet provider requesting subscriber information for the IP address. The subpoena results revealed that the IP address was assigned to the account of Jeffrey Marchione of Alto, Michigan. PSR ¶ 17.

About seven months later, on August 3, 2012, agents executed a search warrant at Marchione's home. Agents seized two laptop computers and two external hard drives. During the search, Marchione confessed to viewing, downloading, and trading images of child pornography on the internet. PSR ¶ 22. He explained that his goal was to amass a large collection of child pornography because other users were more likely to trade child pornography with him if he had a larger collection. PSR ¶ 23.

On August 8, 2012, agents conducted a forensic exam of the computers and hard drives seized during the search of Marchione's home. The exam revealed thousands of images and videos depicting child pornography. The agent also recovered numerous chat sessions in which Marchione admitted sexual contact with minors between the ages of 12 and 17. In the chat sessions, Marchione had provided explanations on how to make contact with young boys by working with kids and building relationships and referred to strategies described in the 150-page "Handbook 4 Child Lovers" found in his shared folder. PSR ¶ 25.

**A.**

On June 4, 2013, the Government filed an indictment charging Marchione with two counts of distribution of child pornography and one count of possession of child pornography. The Government alleged that Marchione possessed more than 40,000 images and 1,600 videos of child pornography. On July 11, 2013, the Government filed a superseding indictment that added a charge of advertising material involving the sexual exploitation of children as Count 1.

On November 26, 2013, Marchione entered into an amended plea agreement.[1] In exchange for pleading guilty to Counts 2, 3, and 4 in the superseding indictment, as well as pleading guilty to the pending criminal sexual conduct charge in state court, the Government agreed (1) to dismiss Count 1; (2) not to oppose the imposition of the federal sentence concurrent to a state-court sentence; (3) not to prosecute Marchione for further violations of 18 U.S.C. §§ 2251(d) or 2252A that occurred between January 5, 2012, and August 3, 2012; and (4) not to oppose a reduction of his offense level for acceptance of responsibility.

---

[1] The parties had entered into the original plea agreement the day before, on November 25, 2013. The amended plea agreement contains only one change; in the "Waiver of Appeal and Collateral Attack" section, the amended plea agreement preserves Marchione's right to appeal any objections to the amount of restitution.

**B.**

Prior to sentencing, the Probation Officer prepared a Presentence Investigation Report ("PSR"). The PSR revealed that Marchione was 48 years old and had a master's degree in counseling. PSR ¶ 86, 90. Prior to his arrest, Marchione installed and repaired software in radiology departments. PSR ¶ 111. In addition, Marchione volunteered as a youth counselor and with Big Brothers Big Sisters. PSR ¶ 35. Marchione was a foster and adoptive parent, as well as a host for foreign exchange students. PSR ¶ 95.

The PSR assigned Marchione a base offense level of 22. PSR ¶ 60. The PSR then added several enhancements based on the specific offense characteristics for an adjusted offense level of 45.[2] PSR ¶ 61–66. Marchione was then awarded a three-point reduction for acceptance of responsibility for a total offense level of 42.[3] PSR ¶72–73. That total offense level, together with Marchione's Criminal History Category I, resulted in a Guidelines range of 360 months to life.[4] PSR ¶ 120.

Marchione objected to the 5-point enhancement for a pattern of abuse pursuant to U.S.S.G. § 2G2.2(b)(5). Specifically, Marchione claimed that "there is insufficient evidence to establish the defendant engaged in a 'pattern' of sexual abuse that includes two or more separate instances of sexual abuse or sexual exploitation of a minor." PSR, PageID 238. Marchione

---

[2] Marchione received the following enhancements: +2 because the pornographic material involved prepubescent minors; +5 because he distributed child pornography with the expectation of receiving a thing of value; +4 because the material portrays sadistic and masochistic conduct; +5 because Marchione engaged in a pattern of sexual abuse and sexual exploitation of minors; +2 because the offense involved the distribution of child pornography via computer; and +5 because the offense involved possession of over 40,000 images.

[3] Without the three-point reduction for acceptance of responsibility, Marchione's total offense level of 45 would have resulted in a Guidelines range of life in prison.

[4] The PSR recognized that the maximum statutorily authorized sentence is 600 months.

reiterated this objection in a sentencing memorandum and at his sentencing. Sentencing Mem., PageID 360; Sentencing Tr., PageID 614.

On April 3, 2014, the district court conducted a sentencing hearing. Neither the Government nor Marchione called any witnesses. Relying on the information in the PSR, the district court sentenced Marchione to 360 months' imprisonment, followed by lifetime supervised release. Moreover, the district court directed Marchione to pay a $300.00 assessment, a $5,000.00 fine, and $500.00 in restitution. Marchione timely appealed the judgment.

## II.

On appeal, Marchione raises three challenges to his sentence: (1) the district court erred when it failed to conduct an evidentiary hearing at sentencing; (2) he received ineffective assistance from counsel when he was allowed to enter into a plea agreement that provided no benefit to him; and (3) his sentence is substantively unreasonable. As an initial matter, the court must determine whether Marchione waived any of these challenges. Although Marchione waived some of his appellate rights in his plea agreement, the waiver specifically excepted any objections he made at sentencing and any arguments that his plea was invalid. Am. Plea Agreement, PageID 155–56. Therefore, as detailed below, Marchione's appellate waiver precludes only his third challenge.

## A.

Marchione first challenges the district court's failure to conduct an evidentiary hearing before giving him a 5-point enhancement under U.S.S.G. § 2G2.2(b)(5). Marchione claims that, because he objected that the evidence was insufficient to support the enhancement, the district court was obligated to entertain testimony from the alleged victims.

Section 2G2.2(b)(5) provides: "If the defendant engaged in a pattern of activity involving the sexual abuse or exploitation of a minor, increase by 5 levels." U.S.S.G. § 2G2.2(b)(5). The application notes explain that a "pattern of activity" is present when a defendant commits at least two separate instances of "sexual abuse or exploitation." U.S.S.G. § 2G2.2(b)(5) *Commentary*. These other incidents need not have occurred during the course of the charged offense, involved the same minor, or even resulted in a conviction. *Id.*

**1.**

According to the PSR, Marchione was given the 5-point enhancement because "[a] preponderance of the evidence supports the fact the defendant engaged in a pattern of sexual abuse and exploitation of minor children . . . ." PSR ¶ 64. The PSR identified three victims who claimed that Marchione had sexually abused them.

The first incident related to Marchione's guilty plea for criminal sexual conduct in the 3rd Degree (Person 13 through 15) in state court. The factual basis for that plea involved a minor, D.M., who had met Marchione at the Family Outreach Center where Marchione was a counselor. D.M. reported that, while staying overnight at Marchione's home, Marchione had sexually assaulted him:

> When [D.M] went into the room he was confronted by Mr. Marchione. D.M. stated Mr. Marchione pushed him onto the bed, unzipped his pants, and then performed oral sex on him. D.M. stated he pleaded with Mr. Marchione to stop, but the defendant continued.

PSR ¶ 37. Based on this conduct, Marchione pleaded guilty to criminal sexual conduct in the state court. The conviction itself establishes one instance of sexual abuse of a minor.

The second victim, R.M.[5]—Marchione's adopted son—told the probation officer that Marchione conditioned his adoption on R.M.'s agreement to have sex with him. R.M. further stated that "he had difficulty dealing with the sexual abuse . . . ." PSR ¶ 30–31.

Third, one of Marchione's previous next-door neighbors, J.M., stated that he had been in a sexual relationship with Marchione from ages 13 to 16.  PSR ¶ 44.  J.M. reported that he had had sex with Marchione on several occasions.  PSR ¶ 45.  J.M. explained that, although he had had a sexual relationship with Marchione, he did not believe he was a victim because he was a willing participant.  PSR ¶ 44.

After receiving the PSR, Marchione's counsel filed objections to the PSR, which included the argument that "there is insufficient evidence to establish the defendant engaged in a 'pattern' of sexual abuse that includes two or more separate instances of sexual abuse or sexual exploitation of a minor."  PSR, PageID 238.

**2.**

At sentencing, Marchione's counsel reiterated his objections to the pattern-of-sexual-abuse enhancement.  The court began by noting that Marchione had a conviction for criminal sexual conduct in state court.

The district court also examined the statement of J.M., who had claimed to have been in a sexual relationship with Marchione for three years.  The district court credited J.M.'s statement because J.M., by his own words, did not think of himself as a victim:

> That's a person who as [the Government] indicates has no axe to grind with Mr. Marchione. In fact idolized him I think the words were.  Continues to view him as a good person. Thought that he was not really victimized even though he describes what all of us would describe as the victim of criminal conduct, namely,

---

[5] Although the PSR and the sentencing transcript use the victim's name, this court will refer to him by his initials.

sex between an adult male and a minor child. And that is really, I think, hard to overlook and hard to undercut and certainly would establish by a preponderance of the evidence in my mind that those events occurred.

*Id.*, PageID 620.

But even beyond that, the district court noted that the "context" of the case "lends significant credibility" to D.M.'s and J.M.'s statements. *Id*. The district court noted that Marchione placed himself in areas with access to young males. The district court also noted the similarities between D.M.'s statement and the instructional *Handbook 4 Child Lovers*, found on Marchione's computer, which describes how to have sex with children and avoid detection. Moreover, Marchione's own statements in chat rooms—in which he claimed to have had sex with several minors, including one as young as 12—lent additional credibility to D.M.'s and J.M.'s statements. Accordingly, the district court properly concluded that D.M.'s and J.M.'s statements established by a preponderance of the evidence a basis for the pattern-of-abuse enhancement. [6] Sentencing Tr., Page ID 623.

**3.**

On appeal, Marchione challenges the pattern enhancement, contending that the district court erred in relying solely on the factual allegation in the PSR. Marchione argues that "[t]his Court should hold that under the circumstances present in the instant case, the Government does not satisfy its evidentiary burden by relying on the PSR to establish disputed facts." Appellant Br. 6.

Pursuant to Federal Rule of Criminal Procedure 32, the sentencing court "must—for any disputed portion of the presentence report or other controverted matter—rule on the dispute or

---

[6] Because D.M.'s and J.M.'s statements were each sufficient to support the pattern-of-abuse enhancement, the district court did not believe it was necessary to credit R.M.'s statement. Sentencing Tr., PageID 620.

determine that a ruling is unnecessary either because the matter will not affect sentencing, or because the court will not consider the matter in sentencing." Fed. R. Crim. P. 32(i)(3)(B). In particular, Rule 32 "'prohibits a court faced with a dispute over sentencing factors from adopting the factual findings of the [PSR] without making factual determinations of its own.'" *United States v. Lang*, 333 F.3d 678, 681 (6th Cir. 2003) (quoting *United States v. Parrott*, 148 F.3d 629, 633 (6th Cir. 1998)).

At sentencing, Marchione disputed the victims' statements that provided the factual predicate for the pattern-of-abuse enhancement. He did not present contradictory evidence; instead, he challenged the reliability of those statements.

Generally, "[w]hen a defendant fails to produce any evidence to contradict the facts set forth in the PSR, a district court is entitled to rely on those facts when sentencing the defendant." *United States v. Geerken*, 506 F.3d 461, 467 (6th Cir. 2007) (citing *United States v. Duckro*, 466 F.3d 438, 449 (6th Cir. 2006)). At the same time, however, this court has held that evidence relied on by a sentencing court must have at least a minimum indication of reliability. *United States v. Reid*, 357 F.3d 574, 582 (6th Cir. 2004).

The district court cogently explained the reasoning for its finding that D.M.'s and J.M.'s statements had sufficient indicia of reliability. Now, on appeal, Marchione asserts that the district court should have conducted an evidentiary hearing, even though he does not proffer any evidence that would undermine those statements. But an evidentiary hearing is only necessary if a defendant carries his initial burden of production: "If a defendant meets this initial burden of production, 'the government must then convince the court that the PSR's facts are actually true.'" *United States v. Adkins*, 729 F.3d 559, 571 (6th Cir. 2013) (quoting *Lang*, 333 F.3d at

681). The defendant, however, "'gets no free ride: he must produce more than a bare denial, or the judge may rely entirely on the PSR.'" *Id.* (quoting *Lang*, 333 F.3d at 681).

Marchione did not proffer any evidence that D.M.'s or J.M.'s statements were fabricated; nor did Marchione even deny that those statements were true. Instead, he attempted to impugn the credibility of the statements. Accordingly, Marchione did not carry his burden of production, and the district court did not err in relying solely on the PSR.

**B.**

Marchione next claims that he received ineffective assistance of counsel when he was permitted to enter into a plea agreement that offered him no benefit. He claims that any benefit he allegedly received, such as a three-point reduction for acceptance of responsibility and the dismissal of Count 1 of the Superseding Indictment, was illusory because he was effectively sentenced to a life-term.

Generally, claims of ineffective assistance of counsel are addressed via collateral attack rather than direct appeal. *United States v. Ferguson*, 669 F.3d 756, 762 (6th Cir. 2012) (citing *Massaro v. United States*, 538 U.S. 500, 504 (2003)). The presumption against resolving an ineffective-assistance claim on direct appeal "'stems from the fact that a finding of prejudice is a prerequisite to a claim for ineffective assistance of counsel, and appellate courts are not equipped to resolve factual issues.'" *United States v. Brown*, 332 F.3d 363, 368–69 (6th Cir. 2003) (quoting *United States v. Aguwa*, 123 F.3d 418, 423 (6th Cir. 1997)). The Sixth Circuit considers ineffective-assistance claims on direct appeal only if the record is sufficiently developed to permit review of the claims. *United States v. Jones*, 489 F.3d 243, 255 (6th Cir. 2007) (citing *United States v. Wagner*, 382 F.3d 598, 615 (6th Cir. 2004)).

Here, the record is insufficiently developed to support Marchione's claim of ineffective assistance of counsel. There is no affidavit or testimony from Marchione's trial counsel explaining the defense strategy, nor is there information regarding the discussions Marchione had with trial counsel. All that is apparent from the record is that Marchione entered into a plea agreement in exchange for (1) dismissal of Count 1, Advertising Material Involving the Sexual Exploitation of Children, (2) a promise from the Government that it would not object to a federal sentence that ran concurrent with the state sentence, (3) a promise that the Government would not object to a reduction in the offense level for acceptance of responsibility; and (4) a promise not to prosecute Marchione for any additional violations of 18 U.S.C. §§ 2251(d) and 2252A that occurred between January and August of 2012. Given the limited record on direct appeal, this court has "no way of knowing whether a seemingly unusual or misguided action by counsel had a sound strategic motive or was taken because the counsel's alternatives were even worse." *Massaro*, 538 U.S. at 505. Nor can this court determine whether any error was prejudicial to Marchione. Therefore, this is not one of the "rare cases where the error is apparent from the existing record," *United States v. Lopez-Medina*, 461 F.3d 724, 737 (6th Cir. 2006), which would allow this court to fully address Marchione's claim. Accordingly, Marchione's ineffective assistance-of-counsel claim is more appropriately raised in post-conviction proceedings because the district court will be able to develop a record specific to the adequacy of the representation. *United States v. Ferguson*, 669 F.3d 756, 762 (6th Cir. 2012) (explaining that an appellate court "may choose to hear the issue on direct appeal if we find that the parties have adequately developed the record").

**C.**

Lastly, Marchione contends that the trial court imposed a substantively unreasonable sentence. But Marchione waived his right to challenge the substantive reasonableness of his sentence in his amended plea agreement. In the amended plea agreement, Marchione "knowingly waive[d] the right to appeal the sentence," except that he retained the right to appeal the sentence on three grounds: (1) the sentence "exceeds the combined statutory maximum of the counts of conviction"; (2) the sentence was "based upon an unconstitutional factor such as race, religion, national origin or gender"; and (3) he may appeal "those objections preserved at sentencing that the Court incorrectly determined the final Guideline range, or the amount of restitution if any." Am. Plea Agreement, PageID 155–56.

"Criminal defendants may waive their right to appeal as part of a plea agreement so long as the waiver is made knowingly and voluntarily." *United States v. Swanberg*, 370 F.3d 622, 625 (6th Cir. 2004) (citing *United States v. Fleming*, 239 F.3d 761, 763–64 (6th Cir. 2001)). Marchione does not claim that his plea agreement was unknowing or involuntary, and nothing in the record suggests the plea agreement is unenforceable. Moreover, not one of the exceptions to his appellate waiver applies to his substantive unreasonableness argument. Marchione's challenge to the substantive reasonableness of his sentence is foreclosed by his appellate waiver, and therefore it is unavailing.

**III.**

Accordingly, Marchione's sentence is affirmed.