NOT RECOMMENDED FOR PUBLICATION
File Name: 24a0280n.06

Nos. 23-3091/3467

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

> **FILED**
> Jun 27, 2024
> KELLY L. STEPHENS, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT |
| v. | ) ) | COURT FOR THE NORTHERN DISTRICT OF OHIO |
| JOHN LEE WATKINS, | ) ) | |
| Defendant-Appellant. | ) ) | OPINION |
| | ) | |

Before: CLAY, THAPAR, and MATHIS, Circuit Judges.

**CLAY, Circuit Judge.** In two separate criminal cases, Defendant John Watkins pleaded guilty to conspiring to commit wire fraud, in violation of 18 U.S.C. § 1343 and § 1349, and multiple counts of wire fraud, in violation of 18 U.S.C. § 1343. In this consolidated appeal, he challenges his sentences in both cases. He argues that the district court legally and factually erred in calculating the loss amount attributable to him in each case. He also argues that the district court erred in sentencing him in two separate sentencing hearings. Finding no error, we **AFFIRM** Watkins' sentences in both cases.

## I.   BACKGROUND

### A.  Factual Background

This consolidated appeal arises out of two separate fraud schemes perpetrated by Watkins and his co-conspirators. From approximately August 2016 until November 2019, Watkins and his co-Defendants, Valerie Marie Masongsong and Terrell Tomlin, used Walmart's money transfer

service, known as Walmart2Walmart, to defraud banks. One member of the group would send money through Walmart2Walmart to another member of the group. Once the money had been collected, the sender would dispute the transfer with his or her bank by claiming that it was fraudulent. Usually, the bank would credit the amount of the disputed charge back to the sender's account. Before the banks could investigate the fraudulent charges, the sender would withdraw the amount of money credited to his or her account. Using the Walmart2Walmart service, Watkins and his co-Defendants successfully defrauded multiple banks of almost $43,000. During the same period between 2016 and 2019, Watkins repeatedly used the same scheme of disputing charges with banks to receive money.

In 2020, Watkins and Tomlin carried out a separate scheme to defraud the government of money set aside to help small businesses during the COVID-19 pandemic. In March 2020, Congress enacted the Coronavirus Aid, Relief, and Economic Security ("CARES") Act, a broad spending bill aimed at providing emergency financial assistance to the public, and, particularly, small businesses. Pub. L. No. 116-136, 134 Stat. 281 (2020). The CARES Act authorized the creation of the Economic Injury Disaster Loan ("EIDL") program, which provided loans to businesses in operation on February 1, 2020. To receive an EIDL loan, an applicant submitted a form to the Small Business Administration ("SBA") detailing certain information about his or her business for the past twelve months, including who owned the business, its size and number of employees, and its gross revenues and average costs of goods. When submitting the form, the applicant affirmed under the penalty of perjury that the application contained truthful information. Applicants who obtained an EIDL loan did not receive a set amount, but typically received a loan corresponding to six months of a business' gross margins, evaluated as the difference between the gross revenue and the cost of goods sold. Generally, these loans were intended to allow businesses

to continue to pay operating costs, such as health care benefits and rent, during the COVID-19 pandemic.

Watkins submitted multiple false EIDL loan applications. He submitted three successful applications, and received $197,300 in EIDL loans from these applications. Watkins submitted four other fraudulent EIDL applications, but was denied by the SBA. Tomlin, his co-conspirator, also submitted multiple fraudulent EIDL loan applications and received $70,500 from the SBA for one successful application.

### B. Procedural History

#### 1. Walmart Fraud Case

On October 22, 2020, a grand jury indicted Watkins on one count of conspiracy to commit wire fraud, in violation of 18 U.S.C. § 1343 and § 1349, and eighteen counts of wire fraud, in violation of 18 U.S.C. § 1343, in connection with the Walmart2Walmart fraud scheme (the "Walmart fraud case"). Watkins pleaded guilty to the charge of conspiracy and fifteen counts of wire fraud on May 10, 2022. Before sentencing, Watkins filed a motion to join the Walmart fraud case with a separate case filed against him for the EIDL loan fraud, as described above. Although the government agreed to this request, the district court declined to sentence Watkins for both offenses at the same time.

The Walmart fraud case proceeded to sentencing alone. In theft and fraud cases, a defendant's base offense level increases proportionately to the amount of loss involved in the fraud. U.S.S.G. § 2B1.1(b)(1). The government submitted a spreadsheet that detailed the actual and additional intended loss from each count of wire fraud stemming from the Walmart fraud scheme. The spreadsheet also listed a number of other instances during the relevant time period in which Watkins had either successfully defrauded or attempted to defraud a bank by disputing a

charge without previously using the Walmart2Walmart transfer service. Although not charged in the indictment, the government asserted that these additional instances constituted relevant conduct because these other transactions were similar to those charged in the indictment, involved the same victims, and occurred during the time period identified in the indictment. Based on these calculations, the government argued that the entire amount of loss that Watkins intended to cause totaled $451,176.80.

The probation office incorporated the government's spreadsheet and final calculations in the presentence report ("PSR") in full. Watkins objected to the PSR's calculation of the loss amount but did not identify any specific deficiencies with the government's calculations. Watkins also disputed the government's reliance on relevant conduct to show the total loss amount; however, other than stating that he did not believe the government had met its burden of proof, Watkins failed to specify why the instances listed by the government should not be considered relevant conduct under the Sentencing Guidelines. U.S.S.G. § 1B1.3.

At the sentencing hearing held on January 19, 2023, the district court found by a preponderance of the evidence that the loss amount recommendation made in the PSR of $451,176.30, (a fifty cent difference from the government's total loss figure due to different rounding) which included the relevant conduct as well as the additional intended loss, was accurate. The district court sentenced Watkins to 36 months' imprisonment, and Watkins timely appealed his sentence.

## 2. EIDL Fraud Case

On December 15, 2022, the government filed a criminal information against Watkins alleging one count of conspiracy to commit wire fraud, in violation of 18 U.S.C. § 1343 and § 1349, and three counts of wire fraud, in violation of 18 U.S.C. § 1343, in connection with his

fraudulent EIDL loan applications (the "EIDL fraud case"). On January 6, 2023, Watkins pleaded guilty to all counts alleged in the information.

Before sentencing, the government submitted a spreadsheet alleging Watkins' total intended loss in the EIDL scheme. It included all of the EIDL loans for which Watkins applied, whether he received the money or not. It also included the loans for which Tomlin applied, those which he received and those that he did not. The government calculated the total intended loss from the EIDL fraud scheme at $1,118,353.

As in the Walmart fraud case, the PSR incorporated the government's loss calculations in full. Watkins disputed only the factual basis for attributing the attempted loans to him. He argued that because he did not request a specific loan amount in his EIDL applications, any intended loss would be speculative. He also argued that some of the attempted loan applications were not actually submitted, but appeared in the SBA's system because of a processing error. At the sentencing hearing, Watkins argued for the first time that the Guidelines did not permit the district court to consider intended loss in calculating the total loss amount.

The government responded to Watkins' claim that the intended loss was speculative by pointing out that the SBA had a system for calculating the amount of a loan based on the gross revenues and costs of goods represented in the application. It also produced an interview with an attorney from the SBA that disputed Watkins' claim that multiple attempted loans resulted from an SBA processing error. At the sentencing hearing on May 23, 2023, the district court overruled Watkins' objections to the loss calculation and found that the total loss attributable to Watkins was properly calculated at $1,118,353.

At the EIDL sentencing hearing, Watkins also reiterated his concern that the district court sentenced him in the Walmart and EIDL fraud cases separately. He requested that the Walmart

fraud sentence not enhance his EIDL sentence and that both sentences run concurrently. The district court found that Watkins' criminal history score was properly calculated in the PSR to include his Walmart fraud offense, and sentenced him to 63 months' imprisonment, but granted his request to have the sentences in both the Walmart and EIDL fraud cases run concurrently. Watkins timely appealed his sentence in the EIDL fraud case.

## II.    DISCUSSION

### A.  Loss Amount

The district court's determination of the loss amount is a factual finding reviewable for clear error. *United States v. Riccardi*, 989 F.3d 476, 481 (6th Cir. 2021). By contrast, this Court reviews the "methodology for calculating" the loss amount and the district court's interpretation of the Guidelines *de novo*. *Id.* (citation omitted).

On appeal, Watkins claims that the district court misinterpreted the Guidelines by using the total intended loss in calculating his offense level. Watkins also argues that, even if the district court properly interpreted the Guidelines, the district court erred by relying on the government's purportedly speculative proffered loss figures. This Court's published precedent forecloses Watkins' first argument. *United States v. You*, 74 F.4th 378, 397–98 (6th Cir. 2023). His second argument fails because it is so underdeveloped on appeal that it is forfeited. Even if we did consider it, the district court did not clearly err in relying on the proffered loss figures from the government.

### 1.  Using Intended Loss to Calculate Offense Level

Theft offenses, such as wire fraud, begin at a base offense level of six. U.S.S.G. § 2B1.1(a). The Guidelines then direct the district court to increase the base offense level based on the loss amount. *Id.* § 2B1.1(b)(1). The government must prove the loss amount by a preponderance of

the evidence. *Riccardi*, 989 F.3d at 481. The commentary to the Guidelines clarifies the meaning of "loss" in the Guidelines text. It states that "loss is the greater of actual loss or intended loss." U.S.S.G. § 2B1.1 cmt. n.3(A).

"When 'determining whether to defer to the Guidelines commentary,' we apply the framework set forth in *Kisor v. Wilkie*," 588 U.S. 558 (2019). *You*, 74 F.4th at 397 (citation omitted). This means that we first resolve whether the Guidelines provision itself is "genuinely ambiguous" after exhausting "all the 'traditional tools' of construction," including "the text, structure, history, and purpose of a regulation." *Kisor*, 588 U.S. at 575 (citation omitted). If the provision is genuinely ambiguous, we may then turn to examine the agency's interpretation—in the context of the Guidelines, the commentary. If the agency's interpretation falls "within the zone of ambiguity" identified after exhausting our "interpretive tools," and if the "character and context of the agency interpretation entitles it to controlling weight," only then may it receive deference. *Id.* at 575–76.

In *You*, a published case, we held that "loss" as used in U.S.S.G. § 2B1.1(b)(1) is genuinely ambiguous, that the commentary's interpretation of loss to include intended loss is within the zone of ambiguity, and that the character and context of the Guidelines' commentary entitled this interpretation to deference. *You*, 74 F.4th at 397–98. Thus, based on this precedent, the district court properly interpreted the Guidelines by using intended loss to calculate the enhancement to Watkins' base offense level.

Watkins acknowledges that our clear, published precedent directly addresses this issue, but simply asks us to overturn this precedent based on a Third Circuit case that came to a different conclusion. *See United States v. Banks*, 55 F.4th 246, 258 (3d Cir. 2022). "[A] panel of this Court cannot overrule the decision of another panel." *Darrah v. City of Oak Park*, 255 F.3d 301, 309

(6th Cir. 2001) (quoting *Salmi v. Sec'y of Health & Human Servs.*, 774 F.2d 685, 689 (6th Cir. 1985)). Moreover, *You* explicitly considered the Third Circuit's approach and rejected it. Because, according to *You*, loss in U.S.S.G. 2B1.1(b)(1) means intended loss in addition to actual loss, the district court did not err in calculating Watkins' loss amount by using his intended loss.

### 2. District Court's Loss Calculations

Watkins next argues that even if the district court properly used intended loss to calculate his loss amount, it clearly erred in calculating the ultimate loss amount because it relied solely on speculative spreadsheets from the government. Watkins' appellate arguments on this issue are so underdeveloped that he has forfeited the issue. "[A]ddressing an issue on appeal 'requires developed argument; a party is required to do more than advert to an issue in a perfunctory manner.'" *Puckett v. Lexington-Fayette Urb. Cnty. Gov't*, 833 F.3d 590, 611 (6th Cir. 2016) (quoting *Bolden v. City of Euclid*, 595 F. App'x 464, 468 (6th Cir. 2014)). We have previously found arguments that span only eight lines of text and include one opinion for authority are "so perfunctory and undeveloped as to be forfeited." *Tri-Cities Holdings LLC v. Tennessee Admin. Procs. Div.*, 726 F. App'x 298, 309 (6th Cir. 2018). Watkins' arguments in this case are similarly insubstantial.

As stated, the district court relied on spreadsheets proffered by the government and incorporated into the PSR to calculate the total loss amount. On appeal, Watkins has not told us how these spreadsheets erred in calculating the loss amount; instead, his brief makes vague allusions that these spreadsheets *may* be inaccurate. *See* Def.'s Br., ECF No. 32, 28 ("[T]he spreadsheets in the case at bar may very well contain figures inflated through 'puffery,' or constructed to serve an agenda rather than reflect reality."). Further, rather than pointing to any particular deficiencies in the government's calculations, he asks the Court to do it for him,

requesting that we independently scrutinize the spreadsheets for any error. *See id.* ("This Court should question the integrity of the prosecution's spreadsheets . . . , scrutinizing their source, methodology, and underlying assumptions before assigning them any weight. It should not simply take the prosecution's word as gospel but engage in its own examination to ascertain the spreadsheets' reliability."). But identifying a clear error in the district court's calculations is Watkins' burden, not ours.

Watkins claims that this case is similar to *You*, in which we found that the district court's loss calculation was clearly erroneous. 74 F.4th at 398–99. But, in *You*, we found that specific deficiencies in the district court's loss estimate rendered it clearly erroneous. *Id.* By contrast, Watkins points to no specific evidence or even argument that would render the loss figures in this case similarly unreliable. Instead, he simply labels the spreadsheets as "speculative" without support. Def.'s Br., ECF No. 32, 28. This type of conclusory argument is insufficient to preserve an issue for appeal. *See Tri-Cities Holdings*, 726 F. App'x at 309. As a result, Watkins has forfeited any argument that the district court clearly erred in calculating the loss amount.

Even if we did consider the argument, the district court did not clearly err in reaching the loss calculations in either case. When calculating a loss amount for sentencing, the district court must calculate only a reasonable estimate of the loss that is supported by a preponderance of the evidence. *United States v. Igboba*, 964 F.3d 501, 509 (6th Cir. 2020). The district court may consider any "relevant conduct" when determining the loss attributable to a defendant.[1] *United*

---

[1] Relevant conduct can include uncharged conduct or the conduct of co-conspirators if it meets certain requirements. U.S.S.G. § 1B1.3(a); *see also United States v. Osborn*, 12 F.4th 634, 638 (6th Cir. 2021); *United States v. Iossifov*, 45 F.4th 899, 928 (6th Cir. 2022). When attributing uncharged conduct to the defendant as relevant conduct, the government must show that the uncharged conduct was "part of the same course of conduct or common scheme or plan as the offense of conviction." U.S.S.G. § 1B1.3(a)(2). This uncharged conduct could be committed by the defendant or an individual acting in concert with the defendant. *Id.* § 1B1.3(a)(1)–(2).

*States v. Donadeo*, 910 F.3d 886, 894 (6th Cir. 2018) (quoting U.S.S.G. § 1B1.3(a)). Rule 32 of the Federal Rules of Criminal Procedure permits the district court to "accept any undisputed portion of the presentence report as a finding of fact." Fed. R. Crim. P. 32(i)(3)(A). If a fact in the PSR is disputed, Rule 32 requires the district court to rule on the dispute. Fed. R. Crim. P. 32(i)(3)(B). But a dispute does not arise when a defendant makes a "bare denial" of the facts contained in the PSR. *United States v. Lang*, 333 F.3d 678, 681 (6th Cir. 2003) (citation omitted). Instead, the district court's duty to rule on the truth of a fact in the PSR is only triggered when the defendant "produce[s] some evidence that calls the reliability or correctness of the alleged facts into question." *Id.* (citation omitted).

In both cases, Watkins' arguments to the district court amounted to bare denials of the loss amounts in the PSRs. In the Walmart fraud case, Watkins stated that he believed the appropriate loss amount was $150,000 based on the sum of the transactions identified in the indictment and his own investigation into various unidentified accounts. But he did not provide any more specific information about this investigation, or any supporting documents showing why $150,000 represented the proper loss amount. Watkins also made the conclusory statement that the government had failed to show by a preponderance of the evidence that relevant conduct should be included in the loss amount. Without more, these arguments amount to bare denials that are insufficient to call the PSR's loss calculation into question. *See Lang*, 333 F.3d at 681. Because the district court was entitled to rely on the loss amount in the PSR as an undisputed fact, it did not clearly err by determining that Watkins' total intended loss amounted to $451,176.30.

The district court also did not clearly err in relying on the spreadsheet produced in the PSR in the EIDL fraud case. As stated, Watkins objected to the government's calculations made in the EIDL fraud case because he believed the additional intended loss from the EIDL loans was too

speculative and that some of the loan applications were not submitted by him. Again, Watkins did not point to any specific evidence or alternative calculations showing what the intended loss figure should be; instead, he simply asserted that the government's figure was wrong. This bare denial does not give rise to a genuine dispute, and does not make the district court's factual finding clearly erroneous. *See id.* Moreover, the government put forward evidence to rebut Watkins' claim that certain loan applications were not made. The district court was entitled to find that the preponderance of the evidence—indeed, the only evidence—supported including these attempted loans in the final loss calculation. Using the numbers that Watkins himself submitted on the loan applications, the government reasonably estimated the actual amounts that the SBA would have disbursed had the loans been successful, and the PSR incorporated these amounts. The district court needed to make only a reasonable estimate of the intended loss by a preponderance of the evidence. *Igboba*, 964 F.3d at 509. In light of this standard, the district court did not clearly err by attributing $1,118,353 in total intended loss to Watkins in the EIDL fraud case.

**B. Joint Sentencing**

Although the contours of Watkins' other sentencing arguments are not clear, we will construe them as challenging the substantive reasonableness of his sentence, which we review for an abuse of discretion. *Gall v. United States*, 552 U.S. 38, 56 (2007). Because Watkins received a within-Guidelines sentence, his sentence is entitled to a presumption of reasonableness. *United States v. Wandahsega*, 924 F.3d 868, 890 (6th Cir. 2019).

Watkins challenges the district court's decision to sentence him separately in the two criminal cases. Although a district court *may* choose to sentence a defendant at the same time in two separate criminal cases, *see, e.g.*, *United States v. Mason*, No. 22-2155, 2024 WL 1699236, at *2 (6th Cir. Apr. 19, 2024), there is no requirement that a district court *must* consolidate a

sentencing merely because the same defendant faces charges in two distinct cases at the same time. Watkins' cases both involved fraud and shared common actors, but they never overlapped factually or even in time. Merely because the sentencings occurred close in time and in front of the same district judge did not require a consolidated sentencing. Further, although the district court conducted separate sentencing hearings, it nevertheless ran Watkins' EIDL fraud sentence concurrently to his Walmart fraud sentence.

Watkins primarily argues on appeal that his Guidelines range in the EIDL fraud case was too high because his criminal history score in the EIDL fraud case included his Walmart fraud conviction. Had he been sentenced to both cases at the same time, his criminal history in the EIDL fraud case would have been a full category lower. As an initial matter, the district court did not err in including the Walmart fraud conviction in Watkins' criminal history score for the EIDL fraud case. Commentary to the Sentencing Guidelines, which neither party disputes is applicable, provides that a criminal history score may include any "sentence imposed prior to sentencing on the instant offense." U.S.S.G. § 4A1.2, cmt. n.1. Because the district court sentenced Watkins in the Walmart fraud case four months before it sentenced him in the EIDL fraud case, it properly included the Walmart fraud case in his criminal history score.

Watkins appears to argue that the district court erred in failing to grant him a downward departure under the Guidelines and in failing to vary downward under the 18 U.S.C. § 3553(a) factors. This Court "do[es] not review a district court's decision not to depart downward unless the record shows that the district court was unaware of, or did not understand, its discretion to make such a departure." *United States v. Santillana*, 540 F.3d 428, 431 (6th Cir. 2008). No such indication in the record exists, and, accordingly, we may not review the district court's decision not to depart downward. To the extent that Watkins challenges the substantive reasonableness of

his sentence by arguing that the district court should have granted him a downward variance, this would also be unsuccessful because Watkins has not rebutted the presumption of reasonableness his sentence receives. It bears repeating that the district court chose to sentence him to both offenses concurrently, rather than consecutively. Because Watkins has not shown that the district court erred by sentencing him to the two offenses separately or by using his Walmart fraud conviction to calculate his criminal history score in the EIDL fraud case, his within-Guidelines' sentence is substantively reasonable.

### III.    CONCLUSION

For the reasons stated above, we **AFFIRM** Watkins' sentences.